**Michael SMITH, Plaintiff,**

v.

**Thomas COUGHLIN, Charles Scully, Cesar Perales, O'Cole, J. Crodelle, Henry Gilchrist and V. Thompson, Defendants.**

**No. 88 Civ. 6830(RPP).**

United States District Court,
S.D. New York.

Dec. 28, 1989.

Michael Smith, pro se.

Caren S. Brutten, Asst. Atty. Gen., New York City.

Marcia Goffin, Asst. Corp. Counsel, New York City.

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff, an inmate in the New York State prison system, brings this *pro se* action pursuant to 42 U.S.C. § 1983,[1] claiming that the defendants violated his due process, equal protection and privacy rights under the constitution. Defendant Cole (identified incorrectly in the caption as "O'Cole") moves for dismissal of the complaint on the grounds of *res judicata*, and pursuant to Fed.R.Civ.Proc. 12(b)(6), or in the alternative Rule 56(b), for failure to state a claim upon which relief may be granted. Defendants Coughlin, Scully, Perales and Crodelle[2] (the "State defendants") also move for judgment on the pleadings pursuant to Rule 12(c) on the ground that the complaint fails to state a claim upon which relief may be granted.

## I. FACTS

Defendants are Cole, Superintendent of the Human Resources Administration: Department of Social Services; Thomas Coughlin, the Commissioner of the New York Department of Correctional Services; Charles Scully, the Superintendent of the Greenhaven Correctional Facility; Cesar Perales, the Commissioner of the New York State Department of Social Services; John D. Crodelle, a senior investigator for the New York State Police; Henry Gil-

---

1. This Court's jurisdiction is predicated on § 1983. Plaintiff also alleges various other wrongs, including assault and battery, false imprisonment, malicious prosecution, libel and slander.

2. Defendant Crodelle is referred to in the complaint as "Cordelle."

christ, a "BCW worker" [3]; and V. Thompson, a social worker. [4]

The facts, as set forth in the complaint, are as follows. On April 30, 1987, plaintiff participated in a Family Reunion Program visit with his mother, Evelyn Singer, and his daughters, Kimberly Hazzard and Lateisha Phipps, at the Greenhaven Correctional Facility, where plaintiff was then incarcerated. Plaintiff admits that he punished Kimberly during the visit. On or about May 19, 1987, defendant Cole informed plaintiff's correctional counselor, Mr. Milligan, that plaintiff's daughter Kimberly had alleged that plaintiff assaulted her during the family visit, and that investigators from Cole's office would interview plaintiff about the charges. Milligan informed plaintiff of the conversation the next day.

On or about May 21, 1987, plaintiff was transferred from the cell block in which he was housed to another one. Plaintiff thereafter was unable to continue working at the prison job he held and suffered the loss of other privileges. On or about May 26, 1987, plaintiff was told by a corrections officer that rumors were circulating about him in the prison population relating to the visit with his mother and daughters, putting him in danger of bodily harm. Plaintiff was transferred to the Protective Custody Unit. As he was taken to that Unit, more than 30 inmates called plaintiff "foul and debasing names." Plaintiff voluntarily signed into the Protective Custody Unit.

On or about May 29, 1987, plaintiff received a letter from his mother stating that Kimberly had not only alleged that she had been assaulted by plaintiff, but she also told Cole she had been sexually abused by him. In her letter, plaintiff's mother also informed plaintiff that she had been questioned by an agent of Cole about her granddaughter's allegations, and that she had denied them.

Plaintiff further alleges that Cole informed another correctional counselor, Ms. McGaughey, that Kimberly's allegations had been deemed to be unfounded. The date of that conversation is not specified. Plaintiff also claims he has been denied a written investigation in violation of state law, and that Cole has subsequently alleged plaintiff used excessive corporal punishment on Kimberly and attempted to sexually abuse his younger daughter Lateisha.

On or about June 14, 1987, plaintiff received a letter dated May 20, 1987 from defendant Cole addressed to Arthur Singer, plaintiff's alias, that concerned the allegations. The letter was open when delivered to plaintiff.

On or about June 15, 1987, nineteen days after plaintiff was placed in protective custody, an Involuntary Protective Custody hearing was held to determine if plaintiff was in such danger that he should be kept in protective custody. Plaintiff called three witnesses at the hearing. The hearing officer found that plaintiff's life would be at "great risk" in the general population. Plaintiff remained in protective custody until December, 1987.

Plaintiff alleges that, on or about July 28, 1987, defendant Cole caused plaintiff's daughters to be removed from the home of

3. Counsel for Cole state in their brief that service has not been effected on Henry Gilchrist. The court files indicate that service on Gilchrist was attempted in January and February 1989 at his place of business. In a March 29, 1989 letter to the Court requesting an extension of time to move or answer, counsel for the City stated that Gilchrist had retired from city service in December, 1987, and he had received no notice of the action. Counsel represented to the Court that she would determine whether Gilchrist would allow his former employer to accept service for him or if he would rather have the City release his current address in order that service could be made upon him. The files do not indicate what determination, if any, was made. It is not clear that Gilchrist has been served. Nevertheless, the Court will address the claims against Gilchrist in this opinion.

4. Defendant Thompson has not moved or joined in any of the present motions. Nevertheless, in the interest of judicial economy, the Court will address the claims against Thompson in this opinion.

Plaintiff names William Grinker as a defendant for the first time in his prayer for relief, and does not name him in the caption or in the body of the complaint. Grinker therefore has not been properly named as a defendant and the Court finds he is not a party herein.

plaintiff's mother. Although she signed a voluntary placement form, plaintiff claims his mother was "tricked", and did not consent to the placement of the children into foster care. Subsequently, a petition was filed against plaintiff in Family Court, Queens County, alleging child abuse and neglect. Plaintiff then filed a petition in Dutchess County, New York, pursuant to Article 78 of the New York Civil Practice Law and Rules, against New York State Child Protective Services and Cole, which petition was dismissed on May 4, 1988, pursuant to motion by the respondents, for improper service and failure to state a valid cause of action.[5]

Plaintiff claims that Cole, Scully, and Crodelle released confidential information to plaintiff's detriment and that Cole kidnapped plaintiff's daughters by placing them in foster homes. He also claims that Cole, Gilchrist and Thompson intentionally harmed plaintiff by filing an Article 10 petition in Queens Family Court when they knew that the daughter's accusations had been determined to be unfounded. He further claims that the facility's failure to charge him with any violation of prison rules or to call his mother as a witness on his behalf at the custody hearing violated plaintiff's due process and equal protection rights. He also charges Scully with improperly supervising and training his personnel.

Plaintiff claims that defendants' actions have caused him headaches, psychological damage, and emotional upset, and have resulted in his being confined to the Special Housing Unit.

## II. DISCUSSION

### A. *Res Judicata*

Defendant Cole asserts that plaintiff's claims are barred by the doctrine of *res judicata*, relying on the May 4, 1988 decision of the Dutchess County Supreme Court that dismissed plaintiff's Article 78 petition. Cole's argument is unpersuasive for several reasons.

The state court's decision reads, in its entirety: "The respondents were improperly served with the Notice of Petition and the petition fails to state a valid cause of action. Accordingly, this proceeding is dismissed."

■ A prior adjudication bars a later proceeding when: (1) the earlier decision was made on the merits, (2) the parties in the later action or their privies also litigated the earlier action, and (3) the issues in both actions are identical. *Amalgamated Sugar v. NL Industries, Inc.*, 825 F.2d 634, 639 (2d Cir.), *cert. denied*, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987).

■ Here, there is no indication on the record before the Court that the prior proceeding involved identical issues to the present action. Second, the state court's decision dismissing plaintiff's *pro se* Article 78 petition appears to have been primarily based on improper service. The statement that the petition did not state a valid cause of action does not clearly appear to have been litigated. Thus, the prior proceeding was not clearly adjudicated on the merits.

Accordingly, Cole's motion to dismiss the complaint pursuant to the doctrine of *res judicata* must be denied.

### B. *Motions to Dismiss and for Judgment on the Pleadings*

■ For purposes of these motions, the Court recognizes that *pro se* litigants are held to less stringent standards with respect to procedure than are attorneys. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980); *Mount v. Book-of-the-Month Club*, 555 F.2d 1108, 1112 (2d Cir.1977) (*pro se* plaintiffs "entitled to a certain liberality with respect to procedural requirements.").

The motions to dismiss with respect to defendants Perales and Coughlin can be handled quickly. Although they are named as defendants, Perales and Coughlin virtually escape mention in the complaint. No allegations suggesting their involvement in

---

**5.** Plaintiff claims that decision was appealed, but no disposition of that appeal is cited.

the alleged constitutional violations appear in the complaint.

■ Defendants argue that the complaint should be dismissed as to defendant Scully for the same reasons. However, in *McCann v. Coughlin,* 698 F.2d 112 (2d Cir.1983), the Second Circuit held that the Commissioner of the Department of Correctional Services and the superintendent of a prison could be held liable if they had either actual or constructive notice of the unconstitutional practices. *Id.* at 125. In this case, the plaintiff's allegations are sufficient to raise the possibility that Scully had actual or constructive notice of the practices complained of so as to state a cause of action against him.[6] Coughlin and Perales, however, virtually escape mention in the complaint, and there are no facts alleged to raise even the inference that they had actual or constructive notice of the practices of which plaintiff complains. Accordingly, the complaint is dismissed as to defendants Coughlin and Perales.

■ The remainder of this case must nevertheless be disposed of on qualified immunity grounds.[7] State officials are immune from suits for damages[8] alleging constitutional violations if it was not clearly established at the time of their acts that the interest asserted by the plaintiff was a protected one, or if it was objectively rea-

sonable for the officials to believe that their acts did not violate clearly established statutory or constitutional rights. *See Gittens v. Lefevre,* 891 F.2d at 39, 42 (2d Cir.1989); *Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987). The rights plaintiff asserts in his complaint were not clearly established at the time the defendants acted, and it was objectively reasonable for the defendants to believe that they were not violating plaintiff's rights. Furthermore, the acts of defendants which are claimed to have violated plaintiff's due process rights did not constitute affirmative acts so as to be actionable under § 1983. *See DeShaney v. Winnebago County Department of Social Services,* — U.S. —, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

**1. Due Process**

Plaintiff's allegations can be divided into three different due process claims. First, his complaint can be read to claim that he was deprived of a liberty interest when certain defendants permitted him to be placed in protective custody. Second, it can be read to claim that he was deprived of a liberty interest when certain defendants did not take action to prevent the general prison population from becoming aware of the investigation into the charges of child abuse. Third, the complaint alleges that plaintiff was deprived of a liberty

**6.** *See, e.g.,* Complaint ¶ 23, where plaintiff alleges that Scully improperly supervised and trained his employees or personnel, and ¶ 19, where plaintiff alleges that Scully allowed confidential information to spread.

**7.** The State defendants have answered the complaint and alleged as an affirmative defense, *inter alia,* good faith qualified immunity, and have therefore properly raised the issue of qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982); *Sec. & Law Enforcement Emp. Dist. C. 82 v. Carey,* 737 F.2d 187, 210 (2d Cir.1984). The Court may consider the issue of qualified immunity on a motion for judgment on the pleadings. In the interests of efficiency and conserving judicial resources, then, the Court will consider the issue of qualified immunity as to the State defendants even though they do not argue it in their motion papers. Defendant Cole asserts qualified immunity as a basis for the granting of his motion to dismiss pursuant to Rule 12(b)(6) or Rule 56(b). Although he has

not answered the complaint and consequently has not affirmatively pleaded the qualified immunity defense, the Court will consider the defense of qualified immunity as to defendant Cole in order to conserve the Court's and the litigants' resources.

**8.** Qualified immunity under § 1983 only protects defendants from liability, not from injunctive relief. Here plaintiff seeks injunctive relief, requiring defendants to remove the "unfounded allegations" from plaintiff's records, requiring Cole to return plaintiff's daughters to his mother's home, requiring the Department of Correctional Services to transfer plaintiff to a "non-Maximum Security Facility", and prohibiting defendants Grinker and Cole from removing plaintiff's daughters from his mother's home without "probable cause or first due process of law as well as an equal protection of the law," but there are insufficient grounds for such affirmative relief against an agency of the state. Therefore this case will be treated as one for damages only.

interest when certain defendants took actions which caused his children to be placed in foster care.

### a. The Placement Into Protective Custody

■ The first of plaintiff's due process claims applies to one of the defendants, Scully, as he is the only defendant who is alleged to have been involved in the decision to place plaintiff in protective custody.

In *Matiyn v. Henderson*, 841 F.2d 31, 36 (2d Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988), the Second Circuit specifically held that prison officials deprived the plaintiff of a protected liberty interest by placing him involuntarily [9] in a special housing unit for his own protection.[10] Until that circuit court decision it was not established that such a placement deprived a prisoner of a protected interest. The court further held that the defendants were entitled to qualified immunity because the officials had not violated clearly established law, citing three reasons: (1) the defendant prison officials could reasonably have concluded that the regulation at issue was not sufficiently mandatory to create a protected liberty interest; (2) the regulation was ambiguous enough that the officials could have concluded that a hearing was not required if an inmate was confined for less than fourteen days; and (3) until that day there had been no judicial decision or interpretation of the regulations to guide the officials' actions. The first and third of the court's reasons apply in this case. The Second Circuit decided *Matiyn* after the events described in plaintiff's complaint took place. Accordingly, the prison officials in this case could not have violated clearly established law when they placed plaintiff in involuntary protective custody, and judgment on the pleadings must be granted in favor of defendant Scully on the grounds of qualified immunity.

Plaintiff's other claim that he was deprived of his due process rights when he was not allowed to introduce evidence disputing his daughter's accusations at his Involuntary Protective Custody hearing is without merit. As his own complaint makes clear, plaintiff was placed into protective custody, not punitive segregation. Therefore, the inquiry at the hearing was properly limited to whether plaintiff needed to be protected, and evidence pertaining to his alleged wrongdoing was irrelevant.

### b. The Dissemination of Information

■ Plaintiff's second due process claim is asserted against Cole, Scully and Crodelle. Plaintiff claims all these defendants violated his rights by releasing or allowing the release of what he calls "confidential information." The release of that information allegedly damaged plaintiff's reputation to the extent that the prison officials were forced to place him in protective custody, resulting in physical and emotional damage and also the termination of plaintiff's prison employment and other privileges.

The defendants assert that the claim against them is barred by their qualified immunity, and the Court agrees. Plaintiff's asserted interest in having the unfounded accusations kept confidential was not then, and is not now, clearly established. Nor does the complaint allege affirmative acts by these defendants sufficient to impose § 1983 liability after the

---

9. Plaintiff concedes in his complaint that, because of the statements made to him that he was in great danger, he agreed not to resist being placed in protective custody. At that time, however, he was unaware of the allegations against him, and knew only what he had been told by corrections officers: that he was in "great danger." Furthermore, plaintiff alleges that he was told that "[i]t would be wise if you were to sign yourself into Protective Custody because even if you do not sign yourself in, we will force you in." Finally, the fact that an "Involuntary Protective Custody" hearing was held indicates that

plaintiff's unwillingness to be in protective custody was at some point acknowledged. The qualified immunity issue, then, will be considered as if it were established that plaintiff's placement into protective custody was involuntary under the circumstances.

10. The Circuit Court of Appeals based this determination on provisions of the New York Code of Rules and Regulations relating to Admission to Special Housing Units. 7 N.Y.C.R.R. § 304.1(a) *et seq.*

Supreme Court's decision in *DeShaney, supra.*

In essence, plaintiff is alleging that defendants damaged his reputation by allowing rumors of the accusations against him to spread inside the prison. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1975), the Supreme Court stated that it could not accept "the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1161. *Paul* holds that the plaintiff must demonstrate damage to reputation *and* the impairment of a right or status recognized by state law—that is, he must show "stigma plus"—in order to establish a constitutional deprivation. *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir. 1989). The question here is whether the rights plaintiff alleges were violated were clearly established such that these defendants should have known that plaintiff's constitutional rights would be violated.

In *Neu v. Corcoran*, 869 F.2d 662 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989), the court decided that the scope of *Paul* was sufficiently ambiguous that the state official in that case was entitled to qualified immunity. *Id.* at 667. The same conclusion must be reached here.

As noted by the Court of Appeals in *Neu,* "*Paul* has been widely interpreted as holding that 'stigma plus' is required to establish a constitutional deprivation [citation omitted], but it is not entirely clear what the 'plus' is." *Id.* at 667. *Neu* went on to hold that, because the alleged defamation did not occur in the course of dismissal from a government job, nor did it come in the course of termination of some other legal right or status recognized by state law, he had not alleged a liberty interest that had been clearly established. *Id.* at 669.

In this case, plaintiff's liberty interest was similarly unestablished as a matter of law. With respect to defendant Scully, plaintiff's contention is that Scully permit-

ted the spreading of rumors in the general prison population, which in turn caused the prison officials to place plaintiff in a special housing unit for his own protection. Not only is no affirmative act of Scully alleged which permitted the spreading of the rumors (*cf. DeShaney*, 109 S.Ct. at 1006 n. 8; *Stoneking v. Bradford Area School District*, 882 F.2d 720 at 731 (3d Cir.1989)), but it is not clearly established under existing case law that the deprivation of plaintiff's alleged liberty interests—the loss of his prison job and other privileges, and his physical and emotional damage—was sufficiently linked to Scully's conduct to meet the *Paul* "stigma plus" standard. On these facts, the unlawfulness of Scully's actions, assuming they were unlawful, would not have been apparent in light of preexisting law. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Cole acted in an objectively reasonable manner as well. As evidence that Cole contributed to the spread of rumors about plaintiff in the prison, plaintiff asserts that Cole, as part of his investigation, made telephone calls to several prison officials in which he reported the accusations against plaintiff. It was objectively reasonable for Cole to call the prison and make inquiries of prison officials' knowledge of the alleged assaults, since the prison is where the abuse was alleged to have occurred. It was equally reasonable for Cole to report the accusations to prison officials so that evidence relevant to his investigation would be preserved.

Moreover, as with defendant Scully, the rights plaintiff is asserting are not clearly established under existing case law. Thus there is no basis for this Court to find that Cole should have known that he was violating any of plaintiff's constitutional rights by reporting the accusations against plaintiff to prison officials.

### c. Placement of Plaintiff's Daughters in Foster Care

Plaintiff's third due process claim is asserted against Cole for placing plaintiff's daughters into foster care. Crodelle and Cole, as well as Gilchrist and Thompson,

are entitled to immunity from suit with respect to this claim. Their actions were further removed from the alleged deprivation than was Scully's.

 It appears from the complaint that Crodelle, a state police investigator, informed Cole of plaintiff's daughter's accusations. Generally, police officers enjoy qualified immunity from suit under § 1983 for investigative acts. *Robison v. Via, supra; Krause v. Bennett,* 887 F.2d 362, 368 (2d Cir.1989) ("'A police officer is entitled to qualified immunity from section 1983 claims charging the officer with unconstitutional arrest if the officer's conduct was 'objectively reasonable.'"). Crodelle's action was clearly reasonable and did not violate any clearly established constitutional rights. In fact, failure to pass on the information about child abuse might have subjected him to § 1983 liability. *See, e.g., Doe v. New York City Dept. of Social Services,* 649 F.2d 134 (2d Cir.1981). Similarly, the actions of Gilchrist and Thompson relating to the placement of plaintiff's daughters in foster care were within the scope of their duties for the Bureau of Child Welfare.

 Cole is also entitled to immunity with respect to plaintiff's claim that Cole violated his rights by placing his daughters in foster care. *See Robison v. Via, supra.* Cole supervised an investigation into the accusations of child abuse mandated by state law. *See* New York Social Services Law § 424(6) (McKinney's 1983 & 1990 Supp.). In *Robison,* the defendants, a Vermont Assistant State's Attorney and a Vermont state trooper, investigated a complaint that the plaintiff's daughter had been sexually abused by her father, plaintiff's husband. Without conducting a hearing or obtaining a court order, the defendants took custody of the plaintiff's two children, for which the plaintiff sued them under § 1983, claiming the act deprived her of a well-established liberty interest in the custody of her children. The defendants asserted their qualified immunity, noting cases that had established that officials may temporarily deprive a parent of custody in emergency circumstances, including if a child is immediately threatened with harm or lacks adequate care or supervision. The court reversed the district court's decision denying the defendants' qualified immunity, holding instead that there was an objectively reasonable basis for believing that the health and safety of the children were threatened.

In this case, it was also objectively reasonable, based on the daughter's accusations alone, for Cole to believe that plaintiff's children were threatened, justifying their removal from plaintiff's mother's home. The fact that the alleged abuser was in prison does not detract from the reasonableness of the decision. As the *Robison* court held, the fear of inadequate care or supervision of the child is enough to allow removal of the child without a pre-deprivation hearing. Here, there was ample evidence, in light of the daughter's accusations, that plaintiff's mother was not caring adequately for the children, and therefore the placement into foster care cannot be the basis for imposing § 1983 liability on Cole, Crodelle, Gilchrist or Thompson. The complaint also indicates that plaintiff and his mother were afforded a proper post-deprivation hearing in Queens County Family Court. Therefore, Cole and the other defendants cannot be held liable under § 1983 for causing plaintiff's children to be placed in foster care.

### 2. Equal Protection

Plaintiff makes no allegations in support of his claim under the equal protection clause. The essence of equal protection is that the government must treat those similarly situated similarly. *Burt v. City of New York,* 156 F.2d 791 (2d Cir.1946). Nothing in the complaint suggests that plaintiff was treated differently from others in similar situations. As a result, the defendants' motions to dismiss are granted with respect to the equal protection claim.

### 3. Privacy Rights

 Plaintiff's claim that defendants violated his constitutional privacy rights is also without merit. Such privacy rights are limited to those that are "fundamental"

or "implicit in the concept of ordered liberty." *Paul v. Davis*, 424 U.S. at 713, 96 S.Ct. at 1166 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)) (no privacy right against government disclosure of arrest for shoplifting). The interests for which plaintiff claims protection do not rise to that level. There is no constitutional protection against the disclosure of the fact of an ongoing investigation. As in *Paul*, plaintiff's "claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private,' but instead on a claim that the State may not publicize a record of an official act such as an arrest," or, in this case, an investigation or accusation. Thus, defendants' motions to dismiss the complaint are granted with respect to the privacy right claim.

### 4. State Law Claims

As the Court has dismissed the federal cause of action as to the moving defendants, there is no jurisdictional basis for plaintiff's claims of assault and battery, false imprisonment, malicious prosecution, libel, and slander. These claims are therefore also dismissed as to the moving defendants.

### III. CONCLUSION

For the reasons stated above, defendants' motions for judgment on the pleadings pursuant to Rule 12(c) and to dismiss the complaint pursuant to Rule 12(b)(6) are granted, and the complaint is dismissed as to all of the defendants.

SO ORDERED.