**Paul KNOEFFLER, Plaintiff,**

v.

**TOWN OF MAMAKATING, Duane Roe, Supervisor Town of Mamakating, sued in his individual capacity, Zoning Board of Appeals, and John Grifo, Building Inspector, sued in his individual capacity, Defendants.**

**No. 98 Civ. 6683 WCC.**

United States District Court,
S.D. New York.

March 15, 2000.

---

Law Offices of Michael H. Sussman, Goshen, New York, for plaintiff, Stephen Bergstein, of counsel.

Goldstein, Stoloff & Silver, L.L.P., Monticello, New York, for defendants, Richard A. Stoloff, of counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Paul Knoeffler brings this action challenging the constitutionality of three municipal sign ordinances of defendant Town of Mamakating ("Mamakating" or the "Town"). Plaintiff also seeks damages for violation of his constitutional rights, allegedly resulting from enforcement of these sign ordinances. In addition to Mamakating, plaintiff brings this action against defendant John Grifo, building inspector for Mamakating, in his individual capacity.[1] Plaintiff now moves for summary judgment on liability. For the reasons stated below, the motion for summary judgment is granted in part and denied in part.

### BACKGROUND

Plaintiff lives in the Town of Mamakating, New York. (Knoeffler Aff. ¶ 2.) For several years preceding this action, plain-

---

1. Plaintiff has withdrawn his claim against defendant Duane Roe. (Pl. Reply Mem. at 1.)

tiff was engaged in a dispute with his neighbors regarding his neighbors' dog and wood stove. Plaintiff alleges that his complaints to the Town Court were dismissed. (*Id.* at ¶ 4.) In early 1998, plaintiff posted signs on his property facing the street to protest the town judge's decision against him and his neighbors' failure to control their dog and pollution of the air by improper operation of their wood-burning stove. (*Id.* at ¶ 6.) The signs read: "Warning: Town Justice Allows Neighbor's Biting Dog to Run Loose!!"; "Tie Up Your Biting Dog"; "Poison Your Own Air, Not Ours!"; "Stop the Smoke Pollution"; " 'God Will Not Forsake Us' "; and "Let the Truth be Known". (*Id.*) On September 13, 1998, plaintiff posted another sign which reads, "Neighbors and Town Want to Do Away With Our Freedom of Speech and Our Right to Protest!" (*Id.*)

On February 18, 1998, defendant Grifo, building inspector for Mamakating, issued an Order to Remedy to plaintiff, stating that "[f]our (4) signs do not meet any of the requirements stipulated in 199–15A" of the Mamakating Town Code. (*Id.*, Ex. 2.) Section 199–15 (before it was amended in 1999, *see infra*) of the Mamakating Town Code regulates signs and billboards. Subsection "A" states that "[s]igns and billboards may be erected and maintained only when in compliance with the following provisions. . . ." Mamakating Town Code § 199–15(A). Section 199–15(A) goes on to list several permitted signs and billboards, including on-site advertising, address signs, identification signs for hotels and non-dwelling buildings, and sale or rental signs. *See* Mamakating Town Code § 199–15(A)(1)–(4).

Grifo issued a revised Order to Remedy on March 25, 1998 and sent plaintiff a letter clarifying the alleged violation. (Grifo Aff., Ex. B.) The Revised Order to Remedy stated that plaintiff's signs were in direct violation of §§ 199–15(A) & (C) of the Mamakating Town Code. Grifo explained that although the signs did not meet the requirements of subsection "A,"

they may be permitted under subsection "C" if the signs were temporary and intended for informational purposes. (*Id.*) Section 199–15(C) states:

> C. Building permits for signs. Building permits shall be required for all billboards. For signs in the interest of the public information and convenience, the Building Inspector, upon approval of the Zoning Board of Appeals, may issue a temporary permit for a period to be designated by said Board. Such temporary signs shall be completely removed by the property owner at the termination of any permit for the erection thereof.

Mamakating Town Code § 199–15(C).

On July 9, 1998, plaintiff filed an application for a permit for "six protest signs, and maybe later some more." (Knoeffler Aff., Ex. 5.) Grifo denied plaintiff's application in a letter dated July 14, 1998 on the grounds that only the Zoning Board of Appeals ("ZBA") could issue a permit under Mamakating Town Code § 199–15(C).

Plaintiff then applied to the ZBA for a permit allowing him to post his signs. At a public hearing on August 4, 1998, the ZBA received several comments from residents who opposed the application because they believed plaintiff's signs were dangerous and could cause traffic accidents. (Grifo Aff., Ex. B.) In its decision dated September 10, 1998, the ZBA retroactively granted plaintiff's application for a temporary sign permit and ordered plaintiff to remove the signs by September 23, 1998. (Knoeffler Aff., Ex. 8.)

On September 18, 1998, plaintiff, by order to show cause, moved this Court for a temporary restraining order and a preliminary injunction preventing defendants from taking any action to enforce Mamakating's sign ordinances against plaintiff. After conducting a hearing, this Court denied plaintiff's motion on October 7, 1998. At that hearing, defendants offered to per-

mit plaintiff to post two signs without limitation as to subject matter.

However, instead of accepting defendants' settlement offer, plaintiff moved for summary judgment in November 1998. Before the motion was resolved, the Town of Mamakating amended § 199–15 of their sign ordinance. The amended § 199–15 states in relevant part:

A. Purpose. The Town's ability to attract economic development activity is accomplished in part by the enforcement of regulations that maintain an attractive community and streetscape, of which signs are a contributing element. A multiplicity of signs clutter the overall appearance of the Town, detracts from its visual quality, and shall be discouraged.

B. Permit Required. Except for signs erected for the identification of the occupant of a single family or two-family dwelling, no sign shall be erected or installed upon any structure or upon any land, nor shall existing signs be changed, until a sign permit has been obtained from the Building Inspector. No sign shall be erected for any development requiring site development plan or subdivision approval by the Planning Board, without sign plan approval by the Planning Board.

Mamakating Town Code § 199–15 (as amended).

Further, the amended ordinance provided a list of exempted signs, for which no permit is required. *See* Mamakating Town Code § 199–15(C), as amended. Exempted signs include signs required by government bodies; traffic control signs; government flags; emblems and banners or name and meeting place signs of civic, philanthropic, educational or religious organizations or institutions; signs relating to the tenant's membership in a professional or civic organization; temporary signs pertaining to campaigns, drives, or events of civic, philanthropic, educational or religious institutions, provided the signs are not erected more than three weeks prior to the event, and are removed not later than two weeks after the event; memorial plaques; signs required to be posted by law; signs indicating the name or address of occupant; sale or rental signs; temporary construction signs; signs announcing a change in the status of a business; signs not visible outside a building; signs displayed in a window indicating a public telephone or notary; holiday decorations in season; temporary signs for tag or garage sales; and "No Trespassing" signs. *See* Mamakating Town Code § 199–15(B), as amended. Relevant to plaintiff's signs, § 199–15(B) states:

(18) Signs setting forth matters of public information and convenience (i.e., statements of personal opinion), including statements of protest other than temporary signs referred in paragraph 199–29C(5) and provided that the size of such sign does not exceed twelve (12) square feet, not more than two (2) signs are placed upon any property, unless such property fronts upon more than one (1) street, in which event two (2) more signs may be erected in each additional frontage, subject to the size requirements established in this paragraph.

Mamakating Town Code § 199–15(B)(18), as amended.

The amended ordinance goes on to state that "[p]olitical signs are regulated in accordance with Chapter 44" of the Mamakating Town Code. *See* Mamakating Town Code § 199–15(C). The remainder of the amended ordinance provides specifications for the construction and maintenance of the permitted signs and provides a list of prohibited signs. Finally, the Planning Board reserves the right to "impose reasonable limitations on the size of a sign, type and characteristics of illumination, number and location, taking into consideration the uses on the site and the reasonable requirement for communicating infor-

mation to vehicular or pedestrian traffic." *See* Mamakating Town Code § 199–15(G)(3), as amended.

Plaintiff now seeks compensatory and punitive damages pursuant to 42 U.S.C. § 1983 on the basis that the enforcement of the original Mamakating Town Code § 199–15 violated his First Amendment rights. Plaintiff also seeks a declaration that § 199–15, as amended, is unconstitutional. Finally, plaintiff asks that this Court declare Chapter 44 of Mamakating Town Code, the town's ordinance governing political signs, unconstitutional on First Amendment grounds.

## DISCUSSION

### I. *Summary Judgment Standard*

A district court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995), *vacated and remanded on other grounds*, 166 F.3d 422 (1999). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir.1995). The party seeking summary judgment has the burden of showing that no genuine factual dispute exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

In this case, the parties agree that there are no material disputed facts.[2] Accord-

ingly, this case is appropriate for disposition by summary judgment. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996).

## II. *Mamakating's Original Sign Ordinance, § 199–15*

### A. *Constitutionality*

The Supreme Court has reaffirmed that residential signs are a form of expression entitled to the highest degree of protection by the Free Speech Clause of the First Amendment. *City of Ladue v. Gilleo*, 512 U.S. 43, 57–59, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994). However, "[i]t is common ground that governments may regulate the physical characteristics of signs . . . ." *Id.* at 48, 114 S.Ct. 2038. Here, Mamakating's original version of § 199–15 permits signs for on-site advertising, address signs, identification signs for hotels and non-dwelling buildings, and sale or rental signs, but requires a permit, issued at the discretion of the ZBA, for signs in the interest of the public information and convenience. Further, whereas the on-site advertising and other commercial signs can be permanent, signs in the public interest must be temporary.

The first step in the analysis of any regulation of speech is to determine whether it is content-based or content-neutral. Content discrimination is presumptively invalid. *See id.* at 59, 114 S.Ct. 2038 (O'Connor, J., concurring). In *Metromedia Inc. v. City of San Diego*, the Supreme Court found that a San Diego ordinance prohibiting all outdoor signs except on-site commercial signs, government signs, historical plaques, religious symbols, for sale signs, and other specific categories of commercial signs, was content-based and therefore unconstitutional. 453 U.S. 490, 512, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). The Court found that San Diego had chosen to value certain types of com-

2. Although defendants had objections to plaintiff's Rule 56.1 Statement of Undisputed Facts, these objections were either to immate- rial facts or on the basis that the statement in question was an issue of law to be decided by the Court.

mercial speech, onsite advertising, over noncommercial speech and other commercial speech, including off-site advertising. *See id.* Noncommercial speech has "consistently been accorded a greater degree of protection than commercial speech." *Id.* at 513, 101 S.Ct. 2882. Therefore, the Court concluded that

> "[i]nsofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages."

*Id.*

Like the ordinance in *Metromedia,* Mamakating's original sign ordinance favors certain commercial signs over non-commercial signs. The ordinance allows onsite advertising, address signs, identification signs for hotels and non-dwelling buildings, and sale or rental signs, to be posted permanently without a permit, while requiring a permit for signs in the public interest, or noncommercial signs, and allowing those signs to be posted only temporarily.

█ By favoring certain classes of signs on the basis of their content, the Town enacted content-based regulations of speech. Strict scrutiny applies to content-based regulations. *See Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). The municipality is required to show that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.* However, "[w]ith rare exceptions, content discrimination in regulations of the speech of private citizens on private property or in a traditional public forum is presumptively impermissible, and this presumption is a very strong one." *City of Ladue,* 512 U.S. at 59, 114 S.Ct. 2038 (O'Connor, J., concurring).

Although the Town's interest in traffic safety and aesthetics is significant, *see Metromedia,* 453 U.S. at 508, 101 S.Ct. 2882, the original ordinance is not narrowly tailored to these interests. There is no evidence that signs in the public interest create greater traffic hazards or more visual clutter than the other types of signs that the ordinance allows without a permit. Further, durational limits on signs have been repeatedly declared unconstitutional. *See, e.g., Curry v. Prince George's County,* 33 F.Supp.2d 447; *McCormack v. Township of Clinton,* 872 F.Supp. 1320 (D.N.J. 1994); *Orazio v. Town of North Hempstead,* 426 F.Supp. 1144 (E.D.N.Y.1977).

█ In addition, the ordinance vests unbridled discretion in the Building Inspector and ZBA to grant or deny temporary permits for signs in the public interest. The ordinance does not provide any standards to guide the Building Inspector and ZBA in their decision to grant or deny a permit. In *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 132, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992), the county administrator had complete discretion as to how much of a fee to charge for a parade permit. The Court found that "[t]he First Amendment prohibits the vesting of such unbridled discretion in a government official." *Id.* Similarly, Mamakating's original sign ordinance fails to articulate any standards for deciding whether to grant or deny temporary permits for signs in the public interest. The ordinance gives the Building Inspector and the ZBA too much discretion. Therefore, the original § 199–15 violates the First Amendment because it is content-based and does not survive strict scrutiny.

**B. *Damages***

█ Plaintiff seeks compensatory damages from the Town and from Grifo in his individual capacity for injuries incurred as the result of the enforcement of the original § 199–15 against him. Plaintiff also seeks punitive damages. The denial of First Amendment rights, or "of a particu-

lar opportunity to express one's views," can give rise to a compensable injury. *Irish Lesbian and Gay Org. v. Giuliani,* 143 F.3d 638, 649 (2d Cir.1998). Therefore, plaintiff is entitled to seek damages for the enforcement of the unconstitutional ordinance against him.

However, it is a separate question whether plaintiff is entitled to seek damages from Grifo in his individual capacity. Defendant objects to the claim against Grifo in his individual capacity on two grounds: (1) plaintiff has improperly supplemented his complaint to add Grifo as a defendant in his individual capacity; and (2) Grifo did not act in his individual capacity in connection with any of the acts or omissions claimed in this action.

First, plaintiff's initial complaint did not name Grifo as a defendant in his individual capacity, but only in his capacity as Building Inspector. This Court gave plaintiff permission to file a supplemental complaint after defendants amended § 199–15. A supplemental pleading is a pleading "setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed.R.Civ.P. 15(d). Defendants argue that plaintiff has not alleged any facts which occurred since the time of his initial complaint which support a claim against Grifo in his individual capacity. Further, Grifo was never served with the supplemental complaint.

It is true that events preceding the initial complaint cannot be introduced in a supplemental complaint under Fed. R.Civ.P. 15(d). However, plaintiff is not alleging new facts or events in regards to the claim against Grifo individually, or adding a new party. The original complaint in this case named Grifo as a defendant, although in his official capacity, and made allegations that "defendants knowingly and maliciously violated plaintiff's clearly-established civil rights of which a reasonable and competent public official should have known." (Initial Complt. ¶ 26.) Plaintiff argues that this allegation

anticipates a qualified immunity affirmative defense which only a public official sued in his individual capacity may plead. Thus, plaintiff argues, the course of proceedings reflects that plaintiff sued Grifo in his individual capacity even though the initial complaint was silent on this issue. *See Rodriguez v. Phillips,* 66 F.3d 470, 482 (2d Cir.1995) (course of proceedings will indicate whether defendant is sued in individual or official capacity). In the alternative, plaintiff asks that we treat this motion as an application to amend the complaint to name Grifo individually.

Even assuming that this Court were to allow plaintiff to amend his complaint to name Grifo individually, Grifo would not be held personally liable for the enforcement of the original § 199–15 because he is entitled to qualified immunity. Defendants did not assert the qualified immunity defense in their answer to the supplemental complaint. Qualified immunity is a defense that must be pleaded. *See Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). However, given the fact that Grifo never was served with the supplemental complaint and that the supplemental complaint did not properly bring a claim against Grifo individually because it was based upon the same events as the initial complaint, this Court will consider whether Grifo is entitled to qualified immunity. Plaintiff has already anticipated this defense in the supplemental complaint, *(Pl. Reply Mem.* at 9), and therefore would not be prejudiced by consideration of the defense at this time. *See Rinaldi v. City of New York,* 756 F.Supp. 111, 116 n. 3 (S.D.N.Y.1990). If we were to allow plaintiff to amend the supplemental complaint to bring a claim against Grifo individually, Grifo would surely assert a qualified immunity defense. In the interest of judicial economy, this Court will consider the issue of qualified immunity as to Grifo. *See Smith v. Coughlin,* 727 F.Supp. 834, 839 n. 7 (S.D.N.Y.1989) (considering qualified immunity defense as to defendant who did not plead the defense in

his answer, but argued it in the motion to dismiss before the court).

The doctrine of qualified immunity protects government officials from liability for civil damages if the challenged action "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Underlying this doctrine is a concern that governmental officials be permitted to perform their jobs without the "constant threat of individual liability resulting from actions taken in compliance with the law of the time." *Poulsen v. City of North Tonawanda,* 811 F.Supp. 884, 898 (S.D.N.Y. 1993).

To determine whether there was a clearly established right, "the relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' but whether the defendant[s] should have known that the specific actions complained of violated the plaintiff's freedom of speech." *Lewis v. Cowen,* 165 F.3d 154, 166–67 (2d Cir.1999). Therefore, although there was a clearly established federal right to freedom of speech as to the posting of residential signs, we must consider whether Grifo should have known that enforcement of § 199–15 violated plaintiff's freedom of speech.

In other words, Grifo has qualified immunity if it was objectively reasonable for Grifo to believe that he could enforce § 199–15 against plaintiff. Use of the "objective reasonableness" test enables courts to decide qualified immunity claims as a matter of law when there are no material issues of disputed fact. *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995); *see also DiMarco v. Rome Hosp. & Murphy Mem'l Hosp.,* 952 F.2d 661, 666 (2d Cir.1992). "If any reasonable trier of fact could find that the defendant's actions were objectively unreasonable," then Grifo may be held individually liable for the violation of plain-

tiff's constitutional rights. *Lennon,* 66 F.3d at 420.

■ Here, Grifo issued an Order to Remedy to plaintiff, stating that "[f]our (4) signs do not meet any of the requirements stipulated in 199–15A" of the Mamakating Town Code. (Knoeffler Aff., Ex. 2.) Then Grifo issued a Revised Order to Remedy on March 25, 1998 and sent plaintiff a letter clarifying the alleged violation. (Grifo Aff., Ex. B.) Finally, Grifo denied plaintiff's application for a temporary permit for signs in the public interest on the grounds that only the Zoning Board of Appeals could issue a permit under Mamakating Town Code § 199–15(C). All of these actions are within the reasonable scope of the duties of a building inspector. Grifo was merely enforcing the Mamakating sign ordinance. Although plaintiff alleges that "defendants knowingly and maliciously violated plaintiff's clearly-established civil rights," (Supp.Complt.¶ 25), the record is devoid of any facts demonstrating that Grifo acted with malice toward plaintiff when enforcing the Mamakating sign ordinance. *See Pica v. Sarno,* 907 F.Supp. 795, 804 (D.N.J.1995) (the fact that official was enforcing a municipal ordinance creates strong presumption that official did not believe he was violating the plaintiff's rights). No reasonable trier of fact could find that Grifo acted objectively unreasonably, and Grifo is entitled to qualified immunity. Thus, plaintiff cannot obtain damages against Grifo individually and plaintiff's claims against Grifo are dismissed.

### 1. *Punitive Damages*

■ Plaintiff seeks punitive damages on the grounds that defendants "knowingly and maliciously violated plaintiff's clearly-established civil rights." (Supp.Complt. ¶ 25.) However, punitive damages may not be assessed against a municipality in a section 1983 action. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

Because plaintiff's claims against Grifo individually are dismissed, leaving only the claims against the Town of Mamakating, plaintiff may not recover punitive damages.

### III. *Mamakating's Current Sign Ordinance, § 199–15*

Mamakating's amended § 199–15 is significantly different from the original version of the ordinance. It uniformly requires permits for all signs, commercial or non-commercial. However, the ordinance includes eighteen classes of exempted signs for which no permit is required. The classes of exempted signs are distinguished based upon the content of the signs. For example, traffic control signs, flags, and memorial plaques are exempt from permit requirements. Significant to this case, signs setting forth matters of public information and convenience are also exempt.

The Second Circuit has adopted the plurality decision in *Metromedia* concerning sign regulation. *See National Advertising Co. v. Town of Niagara*, 942 F.2d 145, 147 (2d Cir.1991) ("*Town of Niagara*"). The plurality in *Metromedia* found that the San Diego ordinance was unconstitutional in part because of its exception provisions. By allowing exceptions from a total ban on billboards for signs with selected non-commercial content, but not other types of non-commercial speech, the San Diego ordinance contained impermissible content-based restrictions. *See Metromedia*, 453 U.S. at 515, 101 S.Ct. 2882. Similarly, Mamakating's ordinance provides exceptions from its permit requirements for certain classes of signs based upon their content.

As stated above, content-based regulations of speech must survive strict scrutiny. *Boos*, 485 U.S. at 321, 108 S.Ct. 1157. The municipality is required to show that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.* Again, there is a strong presumption that

content-based regulation is unconstitutional. *City of Ladue*, 512 U.S. at 59, 114 S.Ct. 2038 (O'Connor, J., concurring). Even where the government has declared a policy of promoting aesthetics and traffic safety, as Mamakating has here, restrictions intended to accomplish those interests have failed to pass strict scrutiny and have been struck down. *See, e.g., City of Ladue*, 512 U.S. 43, 114 S.Ct. 2038; *Arlington County Republican Comm. v. Arlington County*, 983 F.2d 587 (4th Cir. 1993).

Section 199–15(A) states in relevant part that the purpose of the ordinance is to "attract economic development activity" by enforcing regulations that "discourage" a "multiplicity of signs" because they "clutter the overall appearance of the Town" and "detract from its visual quality." Even assuming that this is a compelling government interest, the ordinance is not narrowly tailored enough to overcome the strong presumption of unconstitutionality. "[R]esidential signs have long been an important and distinct medium of expression." *City of Ladue*, 512 U.S. at 54, 114 S.Ct. 2038. The instant case may undermine the Court's reasoning in *City of Ladue* that "individual residents themselves have strong incentives to keep their own property values up and to prevent 'visual clutter' in their own yards and neighborhoods" because plaintiff has posted numerous signs and undeniably created a cluttered yard. However, given the "uniquely valuable or important mode of communication" at issue here, *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 812, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), this Court cannot depart from the presumption that the content-based exceptions to the permit requirement for signs are unconstitutional.

Defendants argue that five of the Justices in *Metromedia* believed that the limited exceptions to the general prohibition of off-premises advertising in the ordinance at issue there were too insubstantial

to constitute discrimination on the basis of content. This argument is not without appeal, and courts within other circuits have accepted it in relying on an inquiry of whether the ordinance regulates on the basis of the viewpoint expressed, instead of considering whether the ordinance discriminates on the basis of content, to determine constitutionality. *See Scadron v. City of Des Plaines,* 734 F.Supp. 1437, 1442 (N.D.Ill.1990); *see also Rappa v. New Castle County,* 18 F.3d 1043, 1065 (3d Cir.1994) (concluding that when there is a significant relationship between the content of a particular speech and a specific location or its use, the state can exempt it from a general ban). However, as mentioned above, the Second Circuit has interpreted *Metromedia* as requiring strict content neutrality for all regulation of non-commercial speech. *See Town of Niagara,* 942 F.2d at 147; *National Advertising v. Town of Babylon,* 900 F.2d 551, 556–57 (2d Cir.1990). Therefore, this Court is constrained in its interpretation of *Metromedia* and must hold that Mamakating's amended § 199–15 is unconstitutional because it contains content-based exemptions from its permit requirements.

## IV. *Plaintiff's Challenge to Chapter 44*

Plaintiff also seeks a declaration that Chapter 44 of Mamakating's Town Code, which governs political advertising, is unconstitutional. Section 44–4 of the Town Code allows the placement of political signs that are smaller than two feet by four feet only in house windows on private property. Political signs larger than two feet by four feet may not be displayed without first applying for and obtaining a registration permit from the town building inspector. *See* Mamakating Town Code § 44–4. An application for a permit to display a larger political sign requires that the applicant sign a statement that the sign "will be erected no earlier than 15 days prior to any election and must be removed no later than 15 days after said election." *Id.* at § 44–5(A)(5). The applicant must also supply a photograph or

sketch of the proposed sign and pay a fee of $25. *Id.* at § 44–5(A)(3)–(4). If the application is complete, the building inspector must grant the permit. Finally, Chapter 44 allows the Town Board to suspend by resolution any of its provisions "in connection with any holiday celebration or upon any occasion of special interest for such time and upon such conditions as shall be prescribed by the Town Board." *Id.* at § 44–8.

Plaintiff challenges Chapter 44 on the basis that it unconstitutionally restricts political speech by limiting political signs to the windows of private property. Further, plaintiff challenges Chapter 44 on the basis that it provides the Town Board with unlimited discretion to suspend the provisions of the ordinance. Before considering the merits of these claims, we must determine two threshold issues: (A) whether plaintiff can assert the challenge to Chapter 44 as a new claim in his Supplemental Complaint; and (B) whether plaintiff has standing to challenge Chapter 44 although it never was enforced against him.

### A. *Failure to Include Chapter 44 Challenge in the Initial Complaint*

The initial complaint in this case did not challenge Chapter 44. Defendants argue that because Chapter 44 pre-dated the initial complaint, any attempt to add a claim challenging Chapter 44 in the Supplement Complaint is improper and should be dismissed.

This Court gave plaintiff permission to file a supplemental complaint after Mamakating amended § 199–15. A supplemental pleading is a pleading "setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed.R.Civ.P. 15(d). Although the Chapter 44 was in existence at the time of the initial complaint, it was not referred to in the original version of § 199–15. However, the amended § 199–15 does refer to Chapter 44. *See* Mamakating Town Code

§ 199–15(C), as amended. Further, plaintiff asserts in the Reply Memorandum of Law that the motion for summary judgment may be treated as an application to amend the complaint to challenge Chapter 44. Because the amended § 199–15(C) refers to Chapter 44, and this Court could properly allow plaintiff to amend his complaint, this Court will consider the merits of plaintiff's challenge to Chapter 44.

### B. *Standing to Challenge Chapter 44*

Defendants contend that because the Chapter 44 provision was not applied to plaintiff, he lacks standing to challenge the statute. Plaintiff `does not dispute that Chapter 44 was not enforced against him, but argues that he has standing to challenge the provision because "it contains unconstitutional provisions that could adversely affect any Town resident," and future town officials may enforce Chapter 44 against plaintiff because his signs address political issues.

█ Plaintiff's challenge is facial, not as-applied. It is well established that a party may challenge a statute that requires a permit for expression on the grounds that it is vague and contains overbroad discretionary authority without first applying for the permit and being denied. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). A plaintiff need not show that his own conduct "could not be regulated by a statute drawn with the requisite narrow specificity." *Dae Woo Kim v. City of New York*, 774 F.Supp. 164, 167 (S.D.N.Y.1991) (citations omitted). The traditional requirements of standing are relaxed when the matter involves a prior restraint of speech or expression because of the potential for abuse of First Amendment rights. *See Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). A statute that does not give parties sufficient notice as to when they have violated its provisions may be severely abused. *See*

*City of Lakewood*, 486 U.S. at 756, 108 S.Ct. 2138; *see also Freedman v. State of Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). Thus, the plaintiff may challenge the limitation of allowing the posting of small political signs only in windows, and the discretionary authority provided for in the statute as potentially overbroad without first applying for a permit and being denied.

### C. *Constitutionality of Chapter 44*

Again, our starting point for determining whether Chapter 44 is constitutional is to decide whether the restriction on speech is content-based. *See Curry*, 33 F.Supp.2d at 451. If the regulation is content-based, strict scrutiny applies and the regulation is presumptively impermissible. *City of Ladue*, 512 U.S. at 59, 114 S.Ct. 2038 (O'Connor, J., concurring). To survive strict scrutiny, the municipality is required to show that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Boos*, 485 U.S. at 321, 108 S.Ct. 1157.

Chapter 44, on its face, regulates on the basis of the content of the speech. By singling out political advertisements for special treatment, Mamakating must consider the content of the signs in determining what regulations apply. Under *Metromedia*, "the city does not have the same range of choice in the area of noncommercial speech to evaluate the strength of, or distinguish between, various communicative interests." 453 U.S. at 514, 101 S.Ct. 2882. Because Mamakating allows some noncommercial speech, and places limitations on other non-commercial speech, defendants' regulations, including Chapter 44, are content-based.

Chapter 44 does not articulate a compelling government interest that it serves. Even assuming that the interest stated in § 199–15, which references Chapter 44, applies to Chapter 44, the ordinance is not narrowly drawn to achieve the interest of "attracting economic development activity by maintaining an attractive community

and streetscape." *See* Mamakating Town Code § 199–15(A), *as amended.* Chapter 44 limits residents of Mamakating to posting signs in the windows of their homes. *See id.* at § 44–4(A). Further, these window signs are limited in size to two feet by four feet. Larger signs require a permit and are subject to durational limits. *See id.* at §§ 44–4(B); 44–5.

■ The Supreme Court has noted that residential signs are "an unusually cheap and convenient form of communication." *City of Ladue,* 512 U.S. at 57, 114 S.Ct. 2038. Although size and shape regulations have been repeatedly upheld by the courts, Mamakating's ordinance goes much farther by only allowing window signs, requiring permits for larger signs, and imposing durational limits on larger signs. At least one court has found that window signs are "a completely ineffective alternative 'channel of communication to lawn signs." *Baldwin v. Redwood City,* 540 F.2d 1360, 1372 n. 34 (9th Cir.1976). Further, durational limits on signs have been repeatedly declared unconstitutional. *See, e.g., Curry,* 33 F.Supp.2d at 455; *McCormack,* 872 F.Supp. 1320; *Orazio,* 426 F.Supp. 1144. Therefore, Chapter 44 cannot withstand strict scrutiny because it is not narrowly tailored. Chapter 44 is a content-based regulation of speech that violates the First Amendment.

In view of this conclusion, we need not consider whether the discretion that Chapter 44 grants the Town Board to suspend the ordinance is unconstitutional.

## CONCLUSION

Defendants' laudable efforts to preserve the attractiveness of the town's residential areas, enhance the homeowners' enjoyment of their property, attract new residents and maintain property values deserve all the support the courts can properly give. There is less inherent sympathy for a homeowner who undermines those efforts by erecting a small forest of unsightly signs on his property. But where the municipality permits signs of any kind on private property, it cannot discriminate against comparable signs publicizing real or imagined grievances against one's neighbors or the town administration. Indeed, this form of speech affords the speaker considerable "bang for the buck." Plaintiff in this case has undeniably received great notoriety for his messages with a minimal monetary outlay. Others might wish he had chosen a less obtrusive mode of expression, but true freedom of speech assures the speaker not only control of the content of his message but also a reasonable choice of delivery media, including all those available for messages of less controversial content.

For the reasons stated above, plaintiff's motion for summary judgment is denied in part and granted in part. Plaintiff's claims against Grifo individually are dismissed with prejudice. The original Mamakating Town Code § 199–15 is hereby declared unconstitutional. Mamakating Town Code § 199–15, as amended, is hereby declared unconstitutional and defendants are permanently enjoined from taking any action to enforce that ordinance against plaintiff. Chapter 44 of Mamakating Town Code is hereby declared unconstitutional. If plaintiff can prove that he has sustained significant actual injuries as a result of the enforcement of any of those ordinances against him he may seek damages therefor pursuant to 42 U.S.C. § 1983. Plaintiff is not entitled to punitive damages.

SO ORDERED.