Risa **SUGARMAN**, Plaintiff,

v.

**VILLAGE OF CHESTER, Town of Cornwall, Town of Deerpark, Town of Goshen, Village of Goshen, Village of Greenwood Lake, Town of Hamptonburgh, Village of Harriman, Village of Highland Falls, Village of Maybrook, City of Middletown, Village of Monroe, City of Newburgh, Town of New Windsor, City of Port Jervis, Town of Tuxedo, Town of Wallkill, Village of Warwick, Village of Washingtonville, Town of Wawayanda and Town of Woodbury, Defendants.**

**No. 01 Civ 8667(WCC).**

United States District Court, S.D. New York.

April 5, 2002.

---

**213.** *See Ballinger v. Del. River Port Auth.*, 311 N.J.Super. 317, 709 A.2d 1336, 1342 (1998).

Thornton, Bergstein & Ullrich (Stephen Bergstein, of counsel), Chester, NY, for Plaintiff.

Boeggeman, George, Hodges & Corde, P.C. (John J. Walsh, of counsel), White Plains, NY, for Defendants Village of Chester, Village of Goshen, Town of Hamptonburgh and City of Middletown.

Lustig & Brown, LLP (Colleen M. Murphy, Randolph E. Sarnacki, of counsel), Buffalo, NY, for Defendant Village of Greenwood Lake.

Duggan, Crotty & Dunn, P.C. (Bruce C. Dunn, Sr., of counsel), New Windsor, NY, for Defendant Town of New Windsor.

Greenwald Law Offices (Marie DuSault, of counsel), Chester, NY, for Defendant Town of Wallkill.

Benjamin Ostrer & Associates, P.C. (Benjamin Ostrer, of counsel), Chester, NY, for Defendant Village of Warwick.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Risa Sugarman brings the instant action pursuant to 42 U.S.C. § 1983 against defendants Village of Chester

("Chester"); Town of Cornwall ("Cornwall"); Town of Deerpark ("Deerpark"); Town of Goshen; Village of Goshen ("Goshen"); Village of Greenwood Lake ("Greenwood Lake"); Town of Hamptonburgh ("Hamptonburgh"); Village of Harriman ("Harriman"); Village of Highland Falls ("Highland Falls"); Village of Maybrook ("Maybrook"); City of Middletown ("Middletown"); Village of Monroe ("Monroe"); City of Newburgh ("Newburgh"); Town of New Windsor ("New Windsor"); City of Port Jervis ("Port Jervis"); Town of Tuxedo ("Tuxedo"); Town of Walkill ("Walkill"); Village of Warwick ("Warwick"); Village of Washingtonville ("Washingtonville"); Town of Wawayanda ("Wawayanda"); and Town of Woodbury ("Woodbury"). Plaintiff alleges that defendants' municipal ordinances regulating the posting of political signs violate freedom of speech under the First Amendment. Plaintiff now moves for summary judgment pursuant to Fed.R.Civ.P. 56(b) against defendants Chester, Goshen, Greenwood Lake, Hamptonburgh, Middletown, New Windsor, Walkill and Warwick[1] seeking nominal damages and injunctive relief. Defendant Greenwood Lake cross-moves for summary judgment. For the reasons that follow, plaintiff's motion is granted in part and denied in part and defendant Greenwood Lake's cross-motion for summary judgment is granted in part and denied in part.

## BACKGROUND

In November 2001, plaintiff, a distinguished attorney, ran as the democratic candidate for the office of Orange County District Attorney. (Pl.Rule 56.1 Stmt. ¶ 86.) In large part because plaintiff was mounting a challenge against a sixteen-year incumbent, plaintiff's stated campaign strategy was to foster name recognition by inundating the public with campaign signs. Plaintiff ordered approximately 5,000 campaign signs. (Pl.Dep. at 15–16.) Most signs measured sixteen by twenty-six inches in size, but twenty measured four by eight feet. (Pl.Decl.¶¶ 3, 5.) Plaintiff alleges that in August 2001, her campaign staff posted political signs announcing her candidacy in various locations in Walkill. (Id. ¶ 6.) Plaintiff's staff similarly posted signs within Wawayanda between September 21–24, 2001. (Id.)

In late August 2001, plaintiff alleges that she was notified by Walkill Town Supervisor Tom Nosworthy and Code Enforcement Officer Barry Weissman that her signs violated the local sign ordinance. (Id. ¶ 7.) On September 4, 2001, plaintiff received a written Notice of Violation demanding that the signs be removed. (Id.) After plaintiff protested, Walkill Building Inspector Ed Steenrod informed plaintiff that he would suggest to the Town Attorney that the ordinance was unconstitutional. No further action was taken by Walkill. On September 28, 2001, plaintiff was notified via telephone by Wawayanda Building Inspector Tom Lyons that her signs posted in Wawayanda had been removed because they were in violation of the local sign ordinance. (Id. ¶ 8.)

Plaintiff argues that as a result of the Notice of Violation served by Walkill and the removal of the signs in Wawayanda, she determined that for the duration of the campaign period she would post signs consistent with the various sign ordinances throughout the County. (Id. ¶ 9.) Plaintiff reasoned that posting signs in violation of the local laws would reflect negatively on her candidacy for County District Attor-

---

1. All other defendants not mentioned have reached independent agreements with plaintiff settling all claims asserted against them.

ney. (*Id.*) Plaintiff alleges that she made the determination as to each remaining defendant that she would not post signs until the various municipal codes permitted their display. (*Id.*) As a result, plaintiff argues that she was improperly discouraged from posting certain signs during the campaign, and was able to post only 3,000 signs and just two of the four by eight foot signs because of the local ordinances. (Pl. Dep. at 38–39.) Plaintiff further alleges that with respect to the signs ultimately posted, she was unable to post them as early in the campaign and in all the locations that she would have liked because of restrictions found within the ordinances. (Pl.Dep. at 106–07, 110–11, 114–115, 130, 138–39.) Plaintiff ultimately lost the election, but suggests that she may run for political office in the future. (Pl.Decl.¶ 11.) Following the election, plaintiff argues that at least two remaining defendants, Goshen and Walkill, threatened enforcement of their sign laws during and after the campaign. (Id. ¶ 10; Pl.Rule 56.1 Stmt. ¶¶ 88–89.)

Plaintiff filed the instant action on September 25, 2001 challenging the facial constitutionality of defendants' sign ordinances and seeking nominal damages and injunctive relief. To the extent that a determination is necessary as to the merits of plaintiff's claims, we will address each challenged ordinance individually as well as defendants' arguments with respect to the claim.

## DISCUSSION

### I. *Summary Judgment Standard*

Plaintiff and defendant Greenwood Lake move for summary judgment pursuant to FED.R.CIV.P. 56. Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 254 (E.D.N.Y.1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali,* 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Summary judgment is warranted when the nonmovant has no evidentiary support for an essential element on which it bears the burden of proof. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Silver v. City Univ. of N.Y.,* 947 F.2d 1021, 1022 (2d Cir.1991).

### II. *Jurisdictional Requirements*

#### A. *Standing*

■ Defendants first argue that plaintiff lacks standing to bring the instant action. To prevail, plaintiff must satisfy the requirements of Article III of the Constitution as well as any judicially imposed prudential requirements. *See In re Application of Dow Jones & Co.,* 842 F.Supp. 603, 606 (2d Cir.1988). To have standing, plaintiff must demonstrate: (1) an "injury in fact" that is "concrete and particularized" as well as "actual or imminent," rather than "conjectural or hypothetical"; (2) an injury that is traceable to the challenged act; and (3) a likelihood that the injury can be redressed by the court. *See*

*Lerman v. Board of Elections in the City of New York,* 232 F.3d 135, 142 (2d Cir. 2000) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The determination of whether standing exists requires consideration of the "manner and degree of evidence required at the successive stages of litigation," *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130, and is made as of the time the Complaint was filed. *See County of Riverside v. McLaughlin,* 500 U.S. 44, 51, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).

In addition to the Article III requirements, courts have self-imposed prudential limitations on standing. *See Lerman,* 232 F.3d at 143 ("The question of standing encompasses both constitutional and prudential considerations."). Generally, a plaintiff may not "rest his claim to relief on the legal rights or interest of third parties." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The rule is designed to ensure that the issues before the court are concrete and to prevent unnecessary opinions on constitutional issues. *See Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). However, an exception to the traditional standing rule has been carved out within the context of the First Amendment. Where, as here, a plaintiff claims that a statute on its face is overly broad, the Supreme Court has allowed the plaintiff to assert the rights of third parties "without regard to the ability of the other to assert his own claims and 'with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.'" *Id.* at 957, 104 S.Ct. 2839 (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). The Court reasoned that

[e]ven where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole then would be the loser. Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged. "Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."

*Id.* at 956–57, 104 S.Ct. 2839 (quoting *Broadrick,* 413 U.S. at 612, 93 S.Ct. 2908.) Under this so-called "overbreadth doctrine," a plaintiff need only "demonstrate a substantial risk that application of the provision will lead to the suppression of speech." *Lerman,* 232 F.3d at 144. Likewise, "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *see also Knoeffler v. Town of Mamakating,* 87 F.Supp.2d 322, 332 (S.D.N.Y.2000) (Conner, J.) (the "traditional requirements of standing are relaxed when the matter involves a prior restraint of speech or expression because of the potential for abuse of First Amendment rights").

Defendants contend that plaintiff lacks direct standing under Article III because

plaintiff fails to adequately demonstrate "injury in fact." In particular, defendants argue that: (1) plaintiff was permitted to post her signs; (2) with the exception of the Notice of Violation from Walkill, no action was taken by any defendants to enforce their sign ordinances to the extent they may have been violated; and (3) plaintiff never applied for a permit to post her signs to the extent any were necessary. Defendants similarly argue that overbreadth standing is inapplicable because plaintiff cannot demonstrate any difference between her claim that the ordinances are invalid on overbreadth grounds and the claim that they are unconstitutional as applied to her specific signs. (Def. Greenwood Lake Mem.Opp.Summ.J. at 4.)

■ We conclude that plaintiff has standing to assert a facial challenge to the various ordinances under the overbreadth doctrine. While plaintiff was undisputedly permitted to post some signs, she alleges that the threat of enforcement and the negative publicity it would generate discouraged her from posting signs as early in the campaign as she would have liked. Furthermore, by voluntarily complying with the ordinances, she was unable to post the larger signs and was limited to posting signs at permitted locations only. This is precisely the type of harm, that of self-censorship, that has led courts to relax traditional standing requirements. *See Virginia v. American Booksellers Assoc.*, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (finding standing despite fact that newly enacted statute had not yet been enforced because "the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution"); *see also Knoeffler*, 87 F.Supp.2d at 332 ("[A] party may challenge a statute that requires a permit for expression on the grounds that it is vague and ... over-

broad ... without first applying for the permit and being denied."). Although plaintiff is not asserting an as-applied challenge, the self-censorship injury plaintiff alleges informs our conclusion that plaintiff has demonstrated "a substantial risk that application of the provision will lead to the suppression of speech" of others not before this Court with respect to political speech. *See Lerman*, 232 F.3d at 144; *see also Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) ("In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged.").

Defendant Greenwood Lake argues that overbreadth standing is inapplicable because plaintiff fails to demonstrate that the ordinances will have a different impact on third parties than it will on plaintiff. Defendant's argument derives from the concept of "substantial overbreadth," as described in *Vincent*, 466 U.S. at 800, 104 S.Ct. 2118. The *Vincent* Court rejected the plaintiffs' application for third-party standing where the plaintiffs conceded that the challenged ordinance was reasonable as applied to them. The Court held that the plaintiffs "[had] not attempted to demonstrate that the ordinance applie[d] to any conduct more likely to be protected by the First Amendment than their own [unprotected] crosswires signs." Because it appeared that the ordinance could be validly applied to plaintiffs as well as "most if not all of the signs of parties not before the Court," the Court concluded that plaintiffs "failed to demonstrate a realistic danger that the ordinance will significantly compromise recognized First Amendment protections of individuals not before the Court." *Id.* at 802, 104 S.Ct. 2118. Here, on the other hand, there is no clear indica-

tion that the challenged ordinances may be validly applied to plaintiff as well as to a majority of those potential plaintiffs not before the Court. While defendants may ultimately prevail, the issue is properly reserved for the determination of plaintiff's claims on the merits. As the Supreme Court clarified in *Secretary of State of Maryland,*

> [t]he requirement that a statute be substantially overbroad before it will be struck down on its face is ·a standing question only to the extent that if the plaintiff does not prevail on the merits of its facial challenge and cannot demonstrate that, as applied to it, the statute is unconstitutional, it has no standing to allege that, as applied to others, the statute might be unconstitutional.

467 U.S. at 959, 104 S.Ct. 2839. Accordingly, we conclude that plaintiff has overbreadth standing to assert her claims premised on the suppression of political speech.

### B. *Mootness*

The second Article III requirement implicated in this action is that of mootness. A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The burden on defendants to demonstrate mootness "is a heavy one." *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). A litigant must establish that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 66, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987); *see also New York State Nat'l Org. for Women v. Terry,* 159 F.3d 86, 92 (2d Cir.1998). Furthermore, in certain cases involving issues which are "capable of repetition, yet

evading review," an exception to the mootness doctrine exists where two elements are met: "(1) [t]he challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). The Second Circuit recently clarified the second prong of the test, noting that "mere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a reasonable expectation or demonstrated probability of recurrence." *Van Wie v. Pataki,* 267 F.3d 109, 115 (2d Cir.2001).

Defendants argue that plaintiff's claims are moot because the county election has passed and that the mootness exception does not apply because plaintiff failed to demonstrate any likelihood that she would be subject to the same challenged action in the future. We disagree. Plaintiff has asserted a proper claim for nominal damages under § 1983 for the alleged constitutional violation. *See Dawes v. Walker,* 239 F.3d 489, 496 (2d Cir.2001) (stating that nominal damages are available in a § 1983 claim for a constitutional violation). It therefore follows that plaintiff has a legally cognizable interest in the outcome of the dispute, and that her claims are not moot. As explained in *Van Wie,*

> [w]e note that had the plaintiffs sought money damages in addition to their request for injunctive relief, this controversy would not be moot. Indeed, for suits alleging constitutional violations under 42 U.S.C. § 1983, it is enough that the parties merely request nominal damages.... Thus, plaintiffs in election cases could avoid the potential for mootness by simply expressly pleading that

should the election pass before the issuance of injunctive relief, nominal damages are requested.

267 F.3d at 115 n. 4; *see also Yniguez v. Arizonans for Official English,* 69 F.3d 920, 949 n. 34 (9th Cir.1995) (noting that "an award of nominal damages ... is singularly appropriate in First Amendment overbreadth cases such as this, for a successful plaintiff ... has convinced the court to strike down a law that would, if left standing, chill the constitutionally protected speech of large numbers of other members of society"), *rev'd on other grounds, Arizonans for Official English v. Arizona,* 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). Accordingly, we need not consider whether the mootness exception properly applies to the facts of the instant dispute.

■ Defendants Chester and Hamptonburgh additionally argue that plaintiff's claims are moot because, after the filing of plaintiff's Complaint, Chester and Hamptonburgh amended their respective ordinances to remove the allegedly offending provisions. However, the voluntary repeal of an ordinance "does not necessarily moot challenges to it, because without a judicial determination of constitutionality the particular governing body remains free to reinstitute the law at a later date." *National Advertising Co. v. Town of Babylon,* 900 F.2d 551, 554 n. 2 (2d Cir.1990). Because it is not clear that the offending statute will not resurface in the future, we decline to moot plaintiff's claim on this basis. *See Adarand Constructors, Inc. v. Slater,* 528 U.S. 216, 222, 120 S.Ct. 722, 145 L.Ed.2d 650 (2000) ("Voluntary cessation of challenged conduct moots a case ... only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur ... [a]nd the heavy burden of persuading the court ...

lies with the party asserting mootness.") (citations and emphasis omitted).

### III. *Constitutionality*

■ The Supreme Court has held that political speech is entitled to the highest form of protection by the Free Speech Clause of the First Amendment. *See McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 346, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) ("[T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs, ... of course includ[ing] discussions of candidates.") (quoting *Mills v. Alabama,* 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966)). Plaintiff moves for summary judgment on the grounds that defendants' ordinances violate the First Amendment through content-based regulation and the grant of excessive discretion to municipal officials. We will discuss each argument in turn and their application to the individual statutes at issue. In evaluating plaintiff's facial challenge, "we must consider [defendants'] authoritative constructions of the ordinance[s], including its own implementation and interpretation of [them]." *Forsyth County, Georgia v. The Nationalist Movement,* 505 U.S. 123, 131, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992).

### A. *Content–Based Regulation*

■ A statute regulating speech "of private citizens on private property or in a traditional public forum is presumptively impermissible, and this presumption is a very strong one." *City of Ladue v. Gilleo,* 512 U.S. 43, 59, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (O'Connor, J., concurring). Where a court determines that a municipality enacted content-based speech regulations, strict scrutiny applies and the municipality must show that the "regulation is necessary to serve a compelling

state interest and that it is narrowly drawn to achieve that end." *See Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). An ordinance is content-based when the content of the speech determines whether the ordinance applies. *See Forsyth County,* 505 U.S. at 134, 112 S.Ct. 2395 (finding challenged ordinance to be content-based because the administrator necessarily had to examine the content of the speech to assess fees required by the ordinance); *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 516, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (finding challenged ordinance to be content-based because it "distinguished in several ways between permissible and impermissible signs at a particular location by reference to their content"). However, the government may impose reasonable time, place and manner restrictions on speech as long as they are content neutral, narrowly tailored to serve a significant government interest and leave open "ample channels for communication." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

### 1. *Greenwood Lake*

Plaintiff argues that certain provisions of the Greenwood Lake sign ordinances regulate speech on the basis of content by requiring noncommercial speakers, including political speakers, to obtain a permit, by imposing content based fees, and by imposing durational, numerical and size limitations. The challenged provisions of the Greenwood Lake Code, Art. VIII, Signs §§ 120–40 to 44 are as follows:

§ 120–42(E.) Permit Required. All permanent signs over two square feet in areas shall require the issuance of a permit . . .

\*　　\*　　\*　　\*　　\*　　\*

§ 120–42(J.) All temporary signs shall be marked by a sticker furnished by the Building Inspector.

(1) Permits for temporary signs may be issued by the Village Board for a period of 14 days. Such permits are renewable, under special circumstances, for an additional 14 days. There will be a penalty determined by the Village Board for each day said sign is not removed.

(2) All temporary signs must be removed within 48 hours after the expiration of the permit.

(3) Any temporary sign which does not comply with this article may be removed by the Building Inspector, at the expense of the owner, seven days following notification to the owner . . .

(4) No more than six temporary sign permits will be issued to an applicant within a twelve-month period for signs to be displayed for a particular activity or commercial enterprise. There will be a penalty determined by the Village Board for each day said sign is not removed.

\*　　\*　　\*　　\*　　\*　　\*

§ 120–42(M.) There shall be no fees charged for permits for signs to be erected by a service club, charitable, civic or religious organization.

\*　　\*　　\*　　.\*　　\*　　\*

§ 120–43(O.) Temporary signs advertising political parties or candidates for election are permitted with the following provisions:

(1) The size of any such sign is not in excess of four square feet.

(2) The erector of such sign, or an authorized agent of the political party or candidate, applies for and obtains a permit from the Building Inspector and deposits with the village, at the time of application, the required fee as a guar-

anty that all signs will be removed promptly within 20 days after the date of the election to which they relate. If such signs are not removed at the end of 30 days, the village shall have them removed and deep the full sum deposited for general village purposes to reimburse the expense incurred.

\* \* \* \* \* \*

§ 120–43(R.) Special promotional devices. Signs or displays . . . which are not readily measurable . . . shall be permitted only with the approval of Building Inspector and Sign Advisory Board; however, an actual permit is required, but no fee is required for these displays.

\* \* \* \* \* \*

§ 120–44(C.) Plans to accompany application. Application for permits for the erection, construction or alteration of signs shall be accompanied by drawings of the proposed work showing the structural details of the sign and other details the Building Inspector may require (i.e., color, size, type of materials and photo of abutting buildings).

### a. *Permit Requirement*

██ Plaintiff argues that Greenwood Lake's ordinance exempts commercial speakers from permit requirements, thereby discriminating against non-commercial speakers who are required to get a permit. Greenwood Lake, on the other hand, contends that the ordinance is content-neutral with respect to permit requirements and that they may therefore impose reasonable time, place or manner restrictions. Although the ordinance requires a permit to post "temporary" signs advertising "political parties," the statute also states that all temporary signs, including commercial signs, require a permit. See § 120–42(J.). Thus, there is no reasonable factual dispute that Greenwood Lake does not regulate on the basis of content with respect to the issuance of permits. Furthermore, the fact that permanent signs are exempt from the permit requirement reflects no bias towards a particular sign content and is therefore content-neutral. Indeed, there is no restriction against a permanent sign containing a political message. Accordingly, we conclude that the permit requirement is a reasonable time, manner and place restriction narrowly tailored to support Greenwood Lake's significant government interests in aesthetics and public safety, and grant Greenwood Lake's motion for summary judgment with respect to this issue. See § 120–40(A) (stating public interest in sign regulation to "protect pedestrians and vehicular traffic from accidents, to preserve property values and to prevent displays that are not in keeping with the desired character of the village").

### b. *Permit Fees*

██ Greenwood Lake argues that the sections of the ordinance requiring permit fees are content-neutral and impose reasonable time, place or manner restrictions. We agree. The Greenwood Lake ordinance requires a permit fee for all temporary signs and for permanent signs exceeding two square feet. With regard to temporary political signs, the fee is in reality not a fee at all, but a deposit that is fully refundable when the temporary political signs are removed after the election. Plaintiff's argument that the statute provides a permit fee exclusion for signs posted by service clubs, charitable, civic and religious organizations and for special promotional devices renders the ordinance constitutionally infirm is unpersuasive. The exemption for special promotional devices contains no reference to the content of the device whatsoever and therefore withstands constitutional scrutiny. Furthermore, the ordinance is constitutional even assuming that § 120–43(O) applies to

all temporary political signs, including those posted by service clubs, charitable, civic and religious organizations.[2] A municipality is entitled to provide preferential treatment to institutions serving the public interest, whether it be favorable tax status or waiving sign permit fees. While a municipality may not regulate speech on the basis of its content, the suggestion that a municipality violates the First Amendment by waiving otherwise applicable sign permit fees for public interest organizations is belied by common sense. *See Infinity Outdoor Inc. v. City of New York*, 165 F.Supp.2d 403, 422–23 (E.D.N.Y.2001) (noting that "[w]hen ... faced with a city ordinance which exempted signs placed by civic, philanthropic, educational, and religious organizations on their lots from regulations applied to other non-commercial signs ... the Seventh Circuit did not read Supreme Court precedent as requiring a local legislature to make a voluminous record in order to justify such common-sense exceptions") (citations and quotations omitted). Contrary to plaintiff's argument, our decision here is consistent with *Knoeffler*, where we struck down a municipal sign ordinance because several classes of signs were exempted from a permit requirement. 87 F.Supp.2d at 330. There, the "classes of exempted signs [were] distinguished based upon the content of the signs," *see id.*, whereas here no such content-based exemptions exist. The requirement that an applicant post a refundable deposit with the municipality furthers Greenwood Lake's significant interests in aesthetics and maintaining property values. The deposit is innocuously designed to ensure prompt removal of the temporary political signs or to cover the expense of removal and effects no genuine burden on First Amendment rights. We therefore hold that the permit fees are a reasonable content-neutral restriction on speech narrowly tailored to further a significant government interest and grant the motion of defendant Greenwood Lake for summary judgment as to this issue.

### c. *Durational, Numerical and Size Limitations*

Plaintiff argues that Greenwood Lake impermissibly imposes a durational requirement on political signs because they must be removed within twenty days following an election. She also argues that the numerical and size limitations imposed in the statute are similarly unconstitutional. While content-based durational, numerical and size limitations may be unconstitutional, *see, e.g., Knoeffler*, 87 F.Supp.2d at 333; *Arlington County Republican Comm. v. Arlington County*, 983 F.2d 587 (4th Cir.1993), no such determination is necessary here because Greenwood Lake's durational, numerical and size limitations are content-neutral. A careful reading of the ordinance reveals that all temporary signs have a durational limit. *See* § 120–42(J)(1) ("Permits for temporary signs may be issued ... for a period of 14 days"). In fact, temporary political signs receive preferential treatment in that they must be removed within twenty days following the election rather than within forty-eight hours after expiration of the permit as with other temporary signs. *See* §§ 120–42(J)(1); 120–43(O)(2). There is no genuine dispute that Greenwood Lake has a valid public interest in ensuring that temporary signs are removed within a reasonable time. *See Baldwin v. Redwood City*, 540 F.2d 1360, 1375 (9th Cir.1976)

---

**2.** A standard canon of statutory construction is that in the event of a conflict, the more specific provision will control the general.

*See Varity Corp. v. Howe*, 516 U.S. 489, 511, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

(finding provision permitting removal of temporary political signs ten days after election to be constitutional, noting that "after an election is over, the first amendment interest in political signs is minimal at best."). Likewise, the limitation on the number of permits per year applies to all temporary signs, including commercial signs, and is therefore a reasonable and content-neutral restriction that is narrowly tailored to advance Greenwood Lake's significant interest in promoting aesthetics, property values and vehicular and pedestrian safety. *See Long Island Bd. of Realtors, Inc. v. Incorporated Vill. of Massapequa,* 277 F.3d 622, 628 (2d Cir.2002) ("Where a legislature's ends are aesthetics and safety, permissible means have included the regulation of the size, placement, and number of signs."); *Foti v. City of Menlo Park,* 146 F.3d 629, 641 (9th Cir. 1998) (upholding numerical and size limitations where "restrictions on the size and number of signs serve the City's interest in traffic safety"); *Knoeffler,* 87 F.Supp.2d at 333 (noting that "size and shape regulations have been repeatedly upheld by the courts"). Plaintiff's charge that the size restriction is content-based is also unpersuasive. Plaintiff alleges that certain signs are allowed to exceed four square feet. (Pl.Rule 56.1 Stmt. ¶ 28.) However, the signs plaintiff refers to are permanent signs, and furthermore, the challenged provisions do not refer to the content of the signs. Other temporary signs within Greenwood Lake's sign law are subject to size restrictions. *See* § 120–43(J). A size limitation based ostensibly on whether the sign is permanent or temporary cannot be fairly characterized as content-based. Furthermore, we find the size limitation to be a reasonable restriction furthering Greenwood Lake's interests in aesthetics, property values and safety that does not unduly restrict political speech. *See Baldwin,* 540 F.2d at 1369 (holding that size

limitation on political signs was constitutional and that it "contribute[s] to the appearance of the community and further[s] other legitimate municipal interests"). Accordingly, we grant summary judgment in favor of Greenwood Lake with respect to the challenged numerical, size and durational limits on temporary political signs.

#### d. *Discretionary Authority*

Plaintiff also argues that the Greenwood Lake ordinance is unconstitutional because it vests unbridled discretion with respect to the grant or denial of a sign permit to municipal policymakers and because it does not guarantee an expeditious grant or denial of permit applications. In *Forsyth County,* 505 U.S. at 130–31, 112 S.Ct. 2395, the Court held unconstitutional an ordinance that vested unbridled discretion in the town administrator in setting permit fees. The Court reasoned:

> [a] government regulation that allows arbitrary application is inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view. To curtail that risk, a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority.

*Id.* (quotations and citations omitted). Moreover, even where a decision maker does not have unbridled discretion, an ordinance must be declared unconstitutional where it fails "to place specific and reasonable time limits on official decision makers and to provide for prompt judicial review of adverse decisions." *Beal v. Stern,* 184 F.3d 117, 127 (2d Cir.1999) (quoting *FW/ PBS, Inc. v. City of Dallas,* 493 U.S. 215, 227, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) ("[W]here the licensor has unlimited time

within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion.")). Where, as here, the challenged regulations are content-neutral, Greenwood Lake must meet the first two factors outlined in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). *See Beal,* 184 F.3d at 128. First, the regulation must require the decision maker to decide whether to issue the permit "within a specified brief period," and second, "a prompt final judicial decision" must be assured. *See Freedman,* 380 U.S. at 58–59, 85 S.Ct. 734.

█ Plaintiff contends that § 120–42(J) confers unbridled discretion to the Village Board. *See* § 120–42(J)(1) ("Permits for temporary signs may be issued ...."). However, the ordinance specifically regulates a subset of temporary political signs through § 120–43(O), which instructs that such signs are permitted providing that the other provisions of § 120–43(O) are met. One such provision requires a candidate to obtain a permit under § 120–44. Notwithstanding, we need not decide whether the permit requirements are sufficiently narrow and objective to survive scrutiny because the ordinance provides absolutely no provision limiting the time period during which a permit may be granted. Having decided to require a permit for the posting of a temporary political sign, Greenwood Lake must provide sufficient safeguards to ensure that a permit determination is made expeditiously. The danger, of course, is that the ordinance permits a rogue decision maker to delay the issuance of a sign permit for any reasons he or she deems appropriate. By failing to protect against this possibility, Greenwood Lake has rendered its sign ordinance unconstitutional. Accordingly, we grant summary judgment on behalf of plaintiff with respect to this issue.

### 2. *Village of Goshen*

Plaintiff alleges that the following provisions of the Goshen Code, Art. VII, Sign Regulations, should be declared unconstitutional:

7.7.4. Political or campaign signs. Signs or posters advertising the name of a candidate for election are permitted subject to the following requirements:

7.7.4.1. Size of sign. No such sign shall be greater in area than nine square feet..

7.7.4.2. Contents of permit application....

\* \* \* \* \* \*

7.7.4.3. Erection Date. No political sign shall be placed or erected more than 28 days prior to a primary election or general election.

\* \* \* \* \* \*

7.7.4.6. Bond. A cash bond of fifty ($50.00) dollars shall be deposited with the Village Clerk and accompanying the political sign application. The cash bond shall be refunded provided that all political signs erected or placed within the Village of Goshen on public property are removed within seven (7) days of the election....

7.7.4.7. Fines. The failure to remove all political signs within seven (7) days after the election or cessation of the activity stated in the permit, shall result in the applicant being subject to a fine in the amount of $25.00 for each week the signs are not removed post-election....

█ Unlike the challenged provisions in the Greenwood Lake ordinance, Goshen's ordinance does not differentiate between permanent and temporary signs without reference to content. While the ordinance does regulate the size and permit requirements for "permanent signs," *see* §§ 7.1.1., 7.2.1., the ordinance imposes

no such restrictions on a content-neutral category of "temporary signs" that includes temporary political signs. Although the Goshen code includes a section entitled "Temporary and special purpose signs" and states that "[t]here shall be no permit fee for a temporary sign." Section 7.7.3., Goshen imposes additional regulations on a distinct category of signs entitled "Political or campaign signs." (Bergstein Aff., Ex. 4.) This clearly reflects a desire to regulate certain signs on the basis of their content. In response, Goshen argues only that the ordinance is designed to "control the proliferation of signs which environmentally impact on the Village and interfere with site distance and the safety of persons traveling on Village streets and highways." (*Id.*) However, even assuming that Goshen presents a compelling government interest, the regulation is not narrowly tailored so as to overcome the strong presumption of unconstitutionality. *See Knoeffler*, 87 F.Supp.2d at 330 (holding that content-based permit requirement did not pass constitutional strict scrutiny). While we sympathize with Goshen's interest in maintaining an aesthetically pleasing community free of the nuisance of copious political signs, in an effort to do so they may not single out *political* signs for differential treatment. Accordingly, we grant plaintiff's motion for summary judgment and declare the provisions regulating political signs unconstitutional.

### 3. *Town of Hamptonburgh*

Plaintiff challenges the constitutionality of the following provision of the Hamptonburgh Code, Art. VIII, Board of Appeals, § 150–24:

150–24(E)(9). [Permitted Signs.] Temporary signs relating to events such as election, benefit events, fund-raising projects and the like, not to exceed 60 days. Temporary signs, if illuminated, shall only be indirectly illuminated.

There shall be no permit required or fee assessed for said signs.

150–24(E)(10). Signs larger in area than those listed elsewhere in this chapter may be permitted pursuant to special authorization and site plan approval by the Planning Board....

 Content-based "durational limits on signs have been repeatedly declared unconstitutional." *Knoeffler*, 87 F.Supp.2d at 333; *see also Whitton v. City of Gladstone, Missouri*, 54 F.3d 1400, 1405 (8th Cir.1995) (declaring defendant's ordinance unconstitutional because "the durational limitations which are applicable only to political signs is a content-based restriction"); *Christensen v. City of Wheaton*, No. 99 C 8426, 2001 WL 214202, at *2 (N.D.Ill. Feb. 27, 2001) (reaffirming prior opinion that the "political sign provision ... was content based and the 30 day durational limitation in the ordinance clearly restricted [plaintiff's] political speech in violation of his First Amendment rights"); *Curry v. Prince George's County, Maryland*, 33 F.Supp.2d 447, 455 (D.Md. 1999) (holding the defendant's ordinance "unconstitutional insofar as it imposes durational limits with respect to political signs posted by individuals on or about their private residences"). The Hamptonburgh durational limitation is content-based in that it restricts the posting period of signs relating to certain events. While a 60–day posting limit on all temporary signs would pass constitutional scrutiny, Hamptonburgh permits the posting of some temporary signs beyond a 60–day period. See § 150–24(E)(6) ("Temporary, nonilluminated promotional signs not to exceed 12 square feet in total ... accessory to the construction, reconstruction, repair or conversion of a residential or non-residential use, not to exceed two years or the entire period of construction, etc., whichever is less."). Accordingly, the pro-

vision is content-based. Hamptonburgh's stated purpose "to protect the aesthetic character of the town by regulating the size, lighting and placement of signs and time of placement of signs" is insufficient to survive strict scrutiny. (Walsh Aff., Ex. E.) Therefore, plaintiff's motion for summary judgment is granted with respect to the durational limitation. However, summary judgment is denied with respect to § 120–24(E)(10), for the provision applies to all signs larger than a specified size and is therefore content-neutral and furthers Hamptonburgh's significant interest in aesthetics.

### 4. *Town of New Windsor*

Plaintiff alleges that the following provision of the New Windsor Code, Art. I, Zoning, is unconstitutional:

§ 48–18(M) Exempt Signs. The following signs are exempt from the permit requirements set forth by this local law . . .

\*　　\*　　\*　　\*　　\*　　\*

■ (15) Political campaign signs pertaining to candidates for public office, political parties or public referendums, provided that said signs are posted only during a period commencing 45 days prior to the election or referendum to which the signs apply and are removed 10 days after such election or referendum. It is the obligation of the individual(s) identified on the campaign sign to remove the same.

The New Windsor Code exempts eighteen classes of signs from the permit requirement. Some classes are subject to similar durational restrictions, but some are not. *See* §§ 48–18(M)(5) (temporary holiday decoration signs); (6) (house numbers and nameplates); (8) (memorial signs, tablets, plaques); (10) (no trespassing or dumping signs); (13) (religious symbols). While New Windsor remains free to exempt all

signs from the permit requirement provided they remain posted for only a specified period of time, or to exempt signs on a content-neutral basis, they may not impose durational requirements on permit-exempt signs on the basis of content. In *Knoeffler*, this Court held, under similar circumstances, that an ordinance imposing a uniform permit requirement that subsequently exempted certain classes of signs on the basis of their content was unconstitutional. 87 F.Supp.2d at 330–31. Here, New Windsor does not dispute that the ordinance requires a candidate wishing to post a campaign sign earlier than forty-five days before an election to apply for a permit. (Dunn Decl. ¶ 6.) Instead, they argue that the permit would have been granted had plaintiff applied. Nonetheless, this argument is misplaced, for the relevant issue is whether the durational permit requirement is content-based. As we conclude that it is, only a narrowly tailored statute and a compelling government interest can save the ordinance. However, New Windsor's asserted interests in aesthetics, public health, safety and welfare are insufficient to satisfy this strict standard. *See id.* Accordingly, plaintiff's motion for summary judgment with respect to this issue is granted.

### 5. *Town of Walkill*

The following provisions of the Town Law, Art. I, Zoning are the subject of the instant dispute:

§ 249–11(D). Exempt signs. The following signs are exempt from the provisions of this section . . . .

(1) Signs inside a building . . . .

(2) Building numbers.

(3) Signs carved into or part of materials which are on an integral and permanent part of the building, noting the name of the building and its date of erection.

(4) Painted wall decorations ... that present no message ... and are meant strictly for artistic, decorative or design use or enhancement.

(5) Public and/or governmental signs, including traffic or similar regulatory devices.

(6) Flags or insignia of any government, except when displayed in connection with a commercial promotion.

(7) Nonilluminated warning, "private drive," "posted" or "no trespassing" signs, not exceeding two square feet.

(8) Temporary nonilluminated "for sale" or "for rent" real estate signs....

(9) Christmas holiday decorations ....

(10) Temporary, nonilluminated window signs and posters not exceeding 10% of the window surface.

(11) One temporary sign for a seasonal roadside stand selling agricultural produce on the premises....

(12) On-premises directional signs for the convenience of the general public....

§ 249–11(K). Signs permitted in all districts....

\*　　\*　　\*　　\*　　\*　　\*

(5) Short-term temporary signs.

(a) Political signs. Signs announcing political candidates seeking public office, political parties and/or political and public issues contained on a ballot may be placed subject to the following regulations:

\*　　\*　　\*　　\*　　\*　　\*

(4) All political signs shall be erected no earlier than 30 days prior to the election in question....

\*　　\*　　\*　　\*　　\*　　\*

§ 249–11(P). Permits.

(1) Permit required. Except for the following, no person may erect, alter or relocate within the town any sign without first obtaining a sign permit:

(a) Exempt signs as specified in § 249–11D of this chapter.

■ We conclude that the Walkill ordinance suffers from the same constitutional infirmity as that in *Knoeffler*. Walkill uniformly requires permits, and accompanying permit fees, for all signs. However, several classes of signs are exempt. While some of the exempted classes are content-neutral, *see* § 249–11(D)(10), other exempted classes are defined on the basis of content of the signs. *See* §§ 249–11(D)(7) –(9), (11). Although we believe that certain signs designed to serve the public interest, such as traffic signs, are properly excluded from the permit requirement, the challenged ordinance has broader application. For example, the ordinance exempts from the permit requirements temporary commercial signs to promote sales of real estate or agricultural products. Accordingly, the ordinance must be deemed content-based and we are compelled to declare it unconstitutional as Walkill proffers no compelling interest in the restriction on political signs. Furthermore, we reject Walkill's argument that political signs may be excluded from the permit requirement if they "convey an opinion or some other message other than that directing attention to a product, service, place, activity, person, institution, business or solicitation." (Walkill Rule 56.1 Stmt. ¶ 1.) Presumably this is because such a sign would not constitute a "sign" as defined by the ordinance. However, this is no different from arguing that verbal campaign speech is not subject to the sign ordinance, a proposition that is uncontroversial but irrelevant. As a result, we grant plaintiff's motion for summary

judgment as to Walkill's permit requirement for political signs.

### 6. *Village of Warwick*

Plaintiff challenges the following provision of the Warwick Ordinance, Art. VII., Signs:

§ 145–82(A). Exempt ʹ signs. These signs may be erected and maintained without permits or fees . . .

\* \* \* \* \* \*

12. Political and promotional posters, banners, promotional devices and similar signs, not exceeding four (4) square feet in the residential districts nor sixteen (16) square feet in the business districts, providing;

a. Placement shall not exceed thirty (30) days, and a period of eleven (11) months shall elapse between the last day of one period of showing and the first day of the next.

\* \* \* \* \* \*

c. The signs shall be removed within three (3) days of the end of the event or thirty (30) days, whichever is less, by the person responsible for removal and disposed of properly or they will be removed by the Building Inspector and the costs of removal shall be paid for by the person designated as responsible for removal.

■ The Warwick ordinance contains language similar to that found in the Walkill ordinance, but presents an issue similar to that presented by the New Windsor Code. *See infra* Parts III.A.4.–5. The ordinance exempts certain signs, including political signs, from the permit requirements provided that certain durational and size requirements are met. The relevant inquiry here is whether the additional requirements are imposed based on the content of the signs. Because the ordinance exempts, on the basis of content, other

classes of signs without imposing durational or size requirements, strict scrutiny applies. *See* § 145–82(A)(5) (no durational requirement for non-illuminated warning, private drive, posted or no trespassing signs); (8) (no durational requirement for temporary non-illuminated "For Sale," "For Rent," or real estate signs and signs of a similar nature); (10) (longer durational limitation for holiday decorations); (11) (no durational requirement for certain signs at gasoline stations.) On its face, the Warwick ordinance singles out political signs for special treatment, and the asserted interests in aesthetics and public safety cannot justify such an intrusion on the First Amendment. *See Knoeffler*, 87 F.Supp.2d at 331. Accordingly, we grant summary judgment for plaintiff with respect to the Warwick ordinance.

### 7. *City of Middletown*

■ The Middletown Code, Ch. 91, Signs, imposes restrictions on temporary signs. *See* § 91.15. For example, a temporary sign may be posted as long as it does not exceed twelve square feet, and as long as it is removed within fourteen days of the conclusion of the event that the sign was promoting. *See* §§ 91.15(G), (I). A permit is required if a temporary sign is posted in a public right-of-way and, presumably, if the sign is permanent. *See* § 91.15(H). As discussed earlier with respect to Greenwood Lake, content-neutral restrictions are permissible if they further a significant government interest and leave open alternative channels of communication. Here, Middletown's restrictions on temporary signs do not regulate on the basis of content and further the City's substantial interests in aesthetics, public safety, welfare and property value. However, Middletown also exempts certain signs:

§ 91.17 Exemptions. The provision and regulations of this ordinance shall not apply to the following signs....

A. Bulletin boards or signs not over sixteen (16) square feet in area for public, charitable or religious institutions, where the same are located on the premises of said institutions.

B. A sign not exceeding sixteen (16) square feet in area, denoting the architect, engineer and contractor, when placed upon public property where work is under construction.

C. Name or number plats and professional signs, not more than two (2) square feet in area.

D. Memorial signs or tablets, names of buildings and dates of erection, when cut into any masonry surface or when constructed of bronze or similar material and affixed directly to the front face of the building and parallel to such front face and which shall not exceed four (4) square feet in area.

Faced with such an ordinance, we have no choice but to conclude that Middletown has impermissibly favored certain types of temporary commercial signs over noncommercial political signs. While a contractor is free to post without a permit a temporary sign on a construction site in a public right-of-way indicating the name of his business, a person wishing to post a temporary campaign sign in the same public right-of-way must first obtain a permit. The Second Circuit is clear that a regulation of noncommercial speech must comply with strict content-neutrality. *See Knoeffler*, 87 F.Supp.2d at 331 ("[T]he Second Circuit ... [requires] strict content neutrality for all regulation of noncommercial speech."). Where, as here, the ordinance favors certain types of commercial speech over noncommercial speech on the basis of its content, the law must be declared unconstitutional. In the plurality decision in

*Metromedia*, adopted by the Second Circuit in *National Advertising Co. v. Town of Niagara*, 942 F.2d 145 (2d Cir.1991), the Supreme Court held unconstitutional a municipal ordinance that permitted only onsite advertising with various exceptions. In examining the opinion, the Second Circuit stated that

> given that commercial speech is afforded less protection than other types of protected speech, the plurality concluded that it would be improper to prefer commercial speech over noncommercial speech. This is, in essence, what the city did by preferring onsite advertising, a type of commercial speech, over all other types of speech, including noncommercial speech.

*Town of Niagara*, 942 F.2d at 147. In light of the applicable Second Circuit precedent, we grant summary judgment in favor of plaintiff on the ground that by exempting certain commercial signs from the ordinance requirements, Middletown impermissibly favored certain temporary signs over others on the basis of their content.

### 8. *Village of Chester*

Plaintiff challenges the following provision of the Chester Code, Signs, § 98–19:

G. Signs permitted in any district. The following signs shall be permitted in any district and shall not require a permit:

\* \* \* \* \* \*

■ (3) Political campaign signs announcing the candidates seeking public political office and other data pertinent hereto, up to an area of sixteen (16) square feet for each premises. These signs shall be confined within private property and removed within seven (7) days after the election for which they were displayed.

The ordinance permits the posting of temporary construction signs up to a maximum of thirty-two square feet that must be removed within fourteen days of the beginning of the intended use of the project. *See* § 98–19(G)(1). There is little doubt that the size limitations are content-based. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (a regulation is content-based when the content conveyed determines whether the speech is subject to the restriction). The First Amendment proscribes municipal favoritism of one form of speech over another, even if the ordinance merely allows one entity to post larger signs than another on the basis of the sign's content. *See North Olmsted Chamber of Commerce v. City of North Olmsted*, 86 F.Supp.2d 755, 772 (N.D.Ohio 2000) ("[T]he City could properly regulate the size of all signs within certain districts in a content neutral fashion, the City must justify its restrictions when it attempts to regulate certain signs within certain districts because of the content of the sign."). While we sympathize with Chester's asserted interests in aesthetics and public safety, these interests are neither compelling nor is the ordinance narrowly tailored to advance those interests. *See id.* Accordingly, Chester's content-based regulations of political speech are unconstitutional and summary judgment is granted for plaintiff.

## CONCLUSION

Defendants' efforts to preserve the attractiveness of their communities and to promote public safety are commendable. Most citizens have witnessed, particularly during the periods preceding and following an election, the flood of campaign flyers and signs extolling the virtues of candidates for various elective positions. These signs, while initially serving a fundamental public purpose, become common litter af-

ter the election. Few candidates exhibit the same degree of urgency in removing their signs that they demonstrated in their posting. However, a municipality may not, in the name of limiting a public nuisance and promoting safety, prohibit or enact restrictive regulations aimed at certain signs on the basis of their content. In the instant action, plaintiff has demonstrated that a majority of defendants thus ran afoul of the First Amendment. Furthermore, unless otherwise indicated, we deny defendants' requests to sever the offending provisions from the remainder of the challenged ordinances. Invalid portions of a statute may be severed if "the remaining portions are sufficient to effect the legislative purpose deducible from the entire act" unless "the valid and invalid portions are so interwoven that neither can stand alone." *Environmental Encapsulating Corp. v. City of New York*, 855 F.2d 48, 60 (2d Cir.1988). As applied to Greenwood Lake, there is little to sever, for we hold the ordinance unconstitutional on the basis of an omission rather than an improper provision. With respect to the remaining defendants, the offending provisions with rare exception are interwoven throughout the statutory scheme and cannot be easily severed without substantially altering the ordinance itself.

For the reasons stated above, with respect to defendants Village of Goshen, Town Hamptonburgh, Town of New Windsor, Town of Walkill, Village of Warwick, City of Middletown and Village of Chester, summary judgment is granted in favor of plaintiff. Having held the various ordinances unconstitutional on the basis of infirm content-based speech regulations, this Court need not consider plaintiffs additional constitutional arguments that the ordinances grant excessive discretion to municipal policymakers or contain vague and discretionary design and construction stan-

dards. With respect to defendant Greenwood Lake, having determined that the challenged ordinance does not guarantee an expeditious grant or denial of a permit application, we grant plaintiffs motion for summary judgment on the ground that the ordinance grants excessive discretion to policymakers. However, as described herein, we grant summary judgment in favor of Greenwood Lake with respect to plaintiffs additional arguments that the ordinance is unconstitutional. Plaintiff shall submit a proposed order for judgment on ten days' notice to defendants.

SO ORDERED.