OPINION OF THE COURT
Memorandum.
Judgment of conviction unanimously affirmed.
Defendant raises First Amendment and equal protection challenges to the Town of Babylon’s regulatory scheme governing the placement of noncommercial signs on residential property. After defendant erected freestanding signs critical of local law enforcement practices on the lawn of his Lindenhurst home, a building inspector for the Town of Babylon (the Town) issued a summons charging a violation of Town of Babylon Code § 213-397 which states: “No sign shall be erected, placed or maintained in any residential district except: A. Aviation signs; B. Not more than one professional nameplate * **§* * ; C. Not more than one sign in connection with sale, rental, construction or improvement of the land or premises * * * ; D. House numbers and nameplates * * * ; E. A sign containing a cautionary message, such as ‘Beware of Dog’ * * * .” Town Code § 213-409 allows “[temporary signs * * * in all districts * * * subject to the following additional restrictions and specifications: A. Permit required * * * E. Any permit granted for such sign shall expire thirty (30) days after issuance and may not be renewed.”* The court below denied defendant’s pretrial motion to dismiss on constitutional grounds (People v Weinkselbaum, 185 Misc 2d 889).
Appellant admits he never applied for a permit to erect his signs. Generally, to have standing to challenge a regulatory scheme, a litigant must prove an “actual or imminent” injury that is “concrete and particularized,” and “traceable to the challenged act” which the court can “likely” redress (Lujan v Defenders of Wildlife, 504 US 555, 560-561; Sugarman v Village of Chester, 192 F Supp 2d 282, 287-288). Appellant is not aggrieved by the Town’s regulation of the content of signs but by the requirement that he obtain a permit before erecting a sign. Nothing in the code explicitly renders such application futile a priori.
*21 In the absence of enforcement proceedings based on the code’s regulatory structure per se, facial challenges to regulatory schemes implicating First Amendment rights are permitted only where the party
“demonstrate [s] that the challenged law either ‘could never be applied in a valid manner’ or that even though it may be validly applied to the plaintiff and others, it nevertheless is so broad that it ‘may inhibit the constitutionally protected speech of third parties’ * * * Properly understood, the latter kind of facial challenge is an exception to ordinary standing requirements, and is justified only by the recognition that free expression may be inhibited almost as easily by the potential or threatened use of power as by the actual exercise of that power * * * Both exceptions, however, are narrow ones: the first kind of facial challenge will not succeed unless the court finds that ‘every application of the statute created an impermissible risk of suppression of ideas’ * * * and the second kind * * * will not succeed unless the statute is ‘substantially’ over-broad, which requires the court to find ‘a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.’ ” (New York State Club Assn., Inc. v City of New York, 487 US 1, 11 [citations omitted].)
The standing exemption is “based on an appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court” (Forsyth County, Ga. v Nationalist Movement, 505 US 123, 129), even if a more narrowly drawn statute would be valid as applied to the party’s conduct (Members of City Council of City of Los Angeles v Taxpayers for Vincent, 466 US 789, 799).
Where both commercial and noncommercial signs are regulated, certain constitutional guidelines must be met: (1) the limitations on noncommercial speech must be within the government’s constitutional power; they must further “an important or substantial governmental interest” unrelated to suppression of expression; and “the incidental restriction on alleged First Amendment freedoms [may be] no greater than is essential to the furtherance of that interest” (United States v O’Brien, 391 US 367, 377); (2) the regulations may not afford greater latitude for commercial over noncommercial speech (Central Hudson Gas & Elec. Corp. v Public Serv. Commn. of *22 N.Y., 447 US 557, 562-563); and (3) the limitations must avoid “underinclusiveness,” thereby exempting a favored point of view from otherwise permissible speech regulation (City of Ladue v Gilleo, 512 US 43, 51).
■ The Town’s purpose is to preserve “the character, quality and appearance of the town and quality of life of its residents” perceived to be “directly and substantially affected by the location, height, size, construction and general design of the signs contained therein.” In the Town’s view, inappropriate signs “degrade the aesthetic quality of the environment; distract from natural and scenic beauty * * * cause diminution in property values and do provide visual distractions and obstructions to passing motorists which can cause or contribute to traffic accidents * * * [and otherwise] obstruct [] * * * vehicular and pedestrian traffic” (Town of Babylon Code § 213-386; cf., National Adv. Co. v Town of Babylon, 900 F2d 551, 556).
As with analogous media, such as billboards, that “combine communicative and noncommunicative aspects,” it is well settled that “the government has legitimate interests in controlling [its] noncommunicative aspects” (Metromedia, Inc. v City of San Diego, 453 US 490, 502). Traffic safety and aesthetics are “substantial governmental goals” (id. at 507-508) and thus constitute “public purposes sufficient to support the regulation of signs” (2 Rathkopf s Law of Zoning and Planning § 17:5). Such regulation must be “reasonably related” to that end (Suffolk Outdoor Adv. Co. v Hulse, 43 NY2d 483, 489) and “narrowly tailored” to serve the stated objective while leaving open “alternative channels for communication” (Clark v Community for Creative Non-Violence, 468 US 288, 293).
Statutes regulating the noncommercial speech “of private citizens on private property * * * [are] presumptively impermissible, and this presumption is a very strong one” (City of Ladue v Gilleo, supra at 59). The Town’s near total ban on noncommercial signs on residential property, standing alone, also implicates Metromedia which, while allowing a municipality to “value commercial messages relating to onsite goods and services more than it values communications relating to offsite goods and services,” forbids placing fewer restrictions on commercial speech relative to noncommercial speech (supra at 512-513, 515; see also, Board of Trustees v Fox, 492 US 469, 477; Town of Carmel v Suburban Outdoor Adv. Co., 127 AD2d 204, 206-207; City of New York v Allied Outdoor Adv., 172 Misc 2d 707, 714). The Town’s regulatory scheme need not eliminate all less restrictive alternatives to be sufficiently “tailored” to *23 satisfy constitutional requirements (Board of Trustees v Fox, supra at 478), but it cannot “totally foreclose that medium * * * Signs that react to a local happening or express a view on a controversial issue both reflect and animate change in the life of a community” (City of Ladue v Gilleo, supra at 54; see generally, 2 Salkin, New York Zoning Law and Practice, Regulating Political Signs § 17:08, at 20-21). Further, “[m]erely allowing on-site non-commercial speech [is] insufficient to meet the constitutional requirements of at least equal treatment for non-commercial speech” (Infinity Outdoor, Inc. v City of New York, 165 F Supp 403, 422 n 12).
The Town allows temporary signs “in all districts,” without regard to content. The question is whether the availability of fee-based temporary signs (here 30 days and nonrenewable), unrestricted as to content and location, creates a sufficient alternate avenue of expression that the remaining regulatory scheme, otherwise reasonably related to “a compelling state interest” (Boos v Barry, 485 US 312, 321), is constitutional. Regulations that do not discriminate among speakers or ideas are “content-neutral” (Buckley v Valeo, 424 US 1, 18) and are entitled to a “more lenient analysis” relative to the strict scrutiny accorded content-based regulations (Bery v City of New York, 97 F3d 689, 696).
Arguably, if the Town restricts noncommercial speech more than commercial speech and the Town’s temporary sign ordinance equally expands their scope, it would leave them equally out of constitutional balance. But if the issue is facial overbreadth, and the expansion is of a magnitude that this alternate channel of communication suffices to render restriction on either within constitutional regulation, the remaining, residual imbalance, if any, does not violate the Metromedia principle. The Town’s temporary sign ordinance permits noncommercial speech in both commercial and residential zones without regard to content, and there are no content-based limitations on time or exemptions from the fee (cf, Knoef-fler v Town of Mamakating, 87 F Supp 2d 322, 330). The Town’s nominal permit fees and 30-day time limitation are permissible burdens incidental to the Town’s legitimate and substantial interest in sign regulation (see, Sugarman v Village of Chester, supra at 293-295).
Further, the “advance notice” requirement does not imply an impermissible prior restraint as to protected content, given the absence of discretionary authority and content-based guidelines. A municipality may demand advance notice of the *24 physical characteristics of proposed temporary signs to regulate the sign’s noncommunicative aspects (Infinity Outdoor, Inc. v City of New York, supra at 426). Given the presumption of constitutionality, in the absence of permit-granting criteria, content-based fees, and renewability discretion, we cannot assume that the Town acts other than to apply its explicit criteria which, in residential districts, virtually ban commercial speech as well as noncommercial signs whose content is obscene, harassing, discriminatory, or otherwise having so diminished a constitutional dignity as to be amenable to content-based regulation. Thus, the temporary permits, available on demand for use in “all districts” for a nominal fee, provide an “ample” alternative “channel! ] for communication” (Ward v Rock Against Racism, 491 US 781, 791; Members of City Council of City of Los Angeles v Taxpayers for Vincent, supra; cf, Bery v City of New York, supra at 698 [limited availability of licenses renders licensing scheme an inadequate “alternative channel”]).
Appellant’s failure to seek a permit deprives the court of an opportunity to determine whether he or similarly situated persons are subject to such “unbridled discretion as to constitute a prior restraint of expression” (Kalke v City of New York, 245 AD2d 221) or whether administrative or judicial remedies suffice to cure a permit’s wrongful denial (Gasparo v City of New York, 16 F Supp 2d 198, 213; see also, Suffolk Outdoor Adv. Co. v Hulse, supra at 491 [absent an application under an ordinance and exhaustion of administrative remedies, a court can “only speculate” as to the potential for injury]; cf., Marathon Outdoor, LLC v Vesconti, 107 F Supp 2d 355, 367 [because First Amendment analysis is “more stringent” than equal protection standards, “an ordinance that can withstand scrutiny under the First Amendment is not vulnerable to an Equal Protection challenge”] [internal quotation marks omitted]).
As we do not find that the ordinances’ application impermissibly infringes on constitutionally protected rights in all cases or that there is a “realistic danger” of such infringement with respect to parties not before the court, our review of defendant’s First Amendment and equal protection claims ends (Forsyth County, Ga. v Nationalist Movement, supra; New York State Club Assn., Inc. v City of New York, supra). The temporary permit ordinance is content and context neutral (Abel v Town of Orangetown, 724 F Supp 232, 234) and provides no issuance *25 criteria that “encourages arbitrary or discriminatory enforcement” (People v Professional Truck Leasing Sys., 190 Misc 2d 806, 808 [App Term, 1st Dept]).
Floyd, P.J., Doyle and Winick, JJ., concur.

 The Town also bans all off-premises commercial advertising: “No sign shall advertise, announce, refer to or call attention to any business, commercial product or commercial service not performed on or connected with the property or building on which the sign is located” (Town of Babylon Code § 213-393).